PEOPLE v AUTOMOTIVE SERVICE COUNCILS OF MICHIGAN,
INC

Docket Nos. 59573, 62170. Submitted December 8, 1982, at Detroit.—
Decided March 8, 1983.

A Wayne County citizens grand jury returned an indictment
against 183 defendants including the Automotive Service Coun-
cils of Michigan, Inc., the officers of that association, and
numerous automobile dealers, collision repair shops, and indi-
vidual officers, employees, and agents thereof. The indictment
charged unlawful combination and conspiracy in unreasonable
restraint of trade and commerce; however, the specific charge
was combination and conspiracy to fix prices for services in the
automotive collision repair business. The defendants sought
dismissal of the indictment in the 16th District Court. The
district court, James E. Mies, J., ruled that the Legislature did
not intend the criminal statute under which the defendants
were charged, MCL 750.558, to be applied to services, as op-
posed to articles and commodities. The district court further
found that the statute could not support a criminal prosecution
for the concerted fixing of prices for services. The indictment
was, therefore, dismissed as to all defendants. Nevertheless, in
anticipation of an appeal of its ruling, the district court re-
solved the defendants' remaining challenges to the indictment.
The district court ruled, assuming *arguendo* the applicability of
the statute to service activities, that there had been sufficient
evidence to indict all but 19 of the defendants and that there
was no prosecutorial misconduct which would justify dismissal
of the indictment. Following the denial of their motion for
reconsideration the people appealed to the Wayne Circuit
Court. The people's appeal was limited to the district court's
ruling that the prohibitions of the statute did not reach service
activities and did not challenge the finding of insufficient
evidence as to 19 of the defendants. The remaining defendants

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 15-17.
[4] 21A Am Jur 2d, Criminal Law § 782.

cross-appealed from the district court's findings of sufficient evidence and absence of prejudicial prosecutorial misconduct. The circuit court, Thomas J. Brennan, J., affirmed the district court in all respects. By leave granted, the state appeals from the circuit court's order and the remaining defendants cross-appeal. The Court of Appeals consolidated the causes on appeal. *Held:*

1. While the district court's construction of the statute was found to be persuasive, the Court of Appeals affirmed the circuit court on the narrower ground of the statute's unquestionable lack of the clarity required of criminal statutes. The language of MCL 750.558 does not clearly and obviously embrace the activities with which the defendants have been charged. The court resolved the doubtful state of the statutory language in defendants' favor.

2. The Legislature's intention may have been to prohibit all agreements which unreasonably restrain trade or commerce, however, the prefatory language of ¶ 5 provides strong support for a more restrictive interpretation. While the statement in ¶ 5 that "Every such trust as is defined herein is declared to be unlawful, against public policy and void" may constitute a legislative declaration of the criminality of all combinations described in ¶¶ 1 through 5, ¶ 5's prefatory language and the general structure of the statute indicate otherwise. It is equally reasonable to construe ¶¶ 1 through 4 as statements of definition, general description, and purpose.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

The task of the courts in interpreting a statute is to discern the intent of the Legislature at the time of passage of the statute.

2. CRIMINAL LAW — CONSPIRACY — RESTRAINT OF TRADE — CLARITY OF STATUTES.

The criminal statute regarding trusts and conspiracies in restraint of trade lacks the clarity required of all criminal statutes with respect to its application to agreements as to services (MCL 750.558; MSA 28.826).

3. CRIMINAL LAW — CONSPIRACY — RESTRAINT OF TRADE.

The language of the criminal statute regarding trusts and conspiracies in restraint of trade does not clearly and obviously embrace the activities which result in a charge of combinaton and conspiracy to fix prices for services in the automobile repair business (MCL 750.558; MSA 28.826).

4. Criminal Law — Judicial Construction.

> Doubt as to whether an act charged is embraced within the prohibitions of a criminal statute is to be resolved in favor of the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Richard A. Solomon,* Special Assistant Attorney General, and *Edwin M. Bladen* and *Richard T. O'Neill,* Assistants Attorney General, for the people.

*Barris, Sott, Denn & Driker* (by *Eugene Driker* and *Daniel M. Share)* and *Kenneth M. Mogill,* for Automotive Service Councils of Michigan, Inc., and others.

*Peter Dozorc,* for Armitage Collision Service, Inc., and Frank T. Henry.

*Stringari, Fritz, Kreger, Ahearn & Hunsinger, P.C.* (by *Arthur M. Stringari* and *Roy R. Hunsinger),* for Bob Borst Lincoln-Mercury, Inc., Robert Borst, Jerome-Duncan, Inc., Richard Duncan, Hutchinson Lincoln-Mercury, Inc., George Jankovich, Ed Schmid Ford, Inc., Edward Schmid, Bob Thibodeau, Inc., Harold Turner, Inc., and Ray Whitfield Ford, Inc.

*DeMarco & Sage, P.C.* (by *John A. DeMarco),* for Douglas Robertson and Theodore Robertson.

*Parenti, Treinen, Hohauser, Greenlees & Bunting, P.C.* (by *L. Nicholas Treinen),* for Skalnek Ford, Inc., Milosch Chrysler-Plymouth Dodge Trucks, and Joe Dunlap.

*Provizer, Eisenberg, Lichtenstein & Pearlman, P.C.* (by *Stephen B. Simon),* for Steven Prusky,

Melvin Edwards, and Avon Collision and Frame Center, Inc.

*Ward F. McDonough, Jr.,* for Elwyn Dubke and Marlin Dubke.

*William F. Huetteman,* for Rochester Hills Chrysler-Plymouth, Inc.

*Hutson, Sawyer, Schenden & Chapman* (by *Michael W. Hutson),* for Birmingham Chrysler Plymouth and Richard A. Mealey and Shelby Collision.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Fred L. Woodworth* and *Craig L. John),* for Richard S. Schoenherr and Stark Hickey Ford, Inc.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Kenneth J. McIntyre* and *Michael G. Vartanian),* for Tarik S. Daoud and Al Long Ford, Inc.

*Clark, Klein & Beaumont* (by *M. V. Kell* and *David H. Paruch),* for Mel Farr Ford, Inc.

*Louis Demas, P.C.* (by *Victor Farneti),* for Lambert's Collision, Inc.

*Gerald Hale Ladue,* for Berkley Collision, Inc., and Edward Kasparian.

*Colombo & Colombo* (by *Lawrence F. Raniszeski),* for Jim Fresard Pontiac, Inc., F. James Fresard, Rinke Pontiac GMC Co., Michael Rinke, Park Motor Sales Co. and Paul Kuhn.

*Richard G. Partrich,* for Larry Dusich and 15 Mound Collision, Inc.

*Rusel J. Comer,* for Ross Witte.

Before: D. C. Riley, P.J., and D. F. Walsh and Wahls, JJ.

D. F. Walsh, J. On February 7, 1980, a Wayne County citizens grand jury returned an indictment against 183 defendants, charging unlawful combination and conspiracy in unreasonable restraint of trade and commerce. MCL 750.558; MSA 28.826. The specific charge was combination and conspiracy to fix prices for services in the automobile collision repair business. The 183 defendants are the Automotive Service Councils of Michigan, Inc. (a trade association of automobile repair businesses), the officers of the association, and numerous automobile dealers, collision repair shops and individual officers, employees, and agents thereof.

In district court, defendants sought dismissal of the indictment, arguing: (1) inapplicability of MCL 750.558; MSA 28.826 to the activity alleged by the prosecution, (2) insufficiency of the evidence, and (3) prosecutorial misconduct. The district court, in a thoughtful and well-reasoned opinion, ruled that the Legislature did not intend that MCL 750.558; MSA 28.826 be applied to services, as opposed to articles and commodities. The court further found that the statute was "so poorly drafted, so confusing and ambiguous" that it could not support a criminal prosecution for the concerted fixing of prices for services. The indictment was, therefore, dismissed as to all defendants. In anticipation of the Attorney General's appeal of its ruling, the district court resolved defendants' remaining challenges to the indictment. Assuming *arguendo* the applicability of the statute to service activities, the court ruled that there had been sufficient evidence to indict all but 19 of the defendants, and the

court found no prosecutorial misconduct which would justify dismissal of the indictment. The Attorney General's motion for reconsideration was denied.

The Attorney General's appeal to circuit court was limited to the district court's ruling that the prohibitions of MCL 750.558; MSA 28.826 do not reach service activities. There was no challenge to the district court's finding of insufficient evidence as to 19 of the defendants. The remaining defendants cross-appealed from the district court's findings of sufficient evidence and absence of prejudicial prosecutorial misconduct. The circuit court affirmed the district court in all respects. By leave granted, the Attorney General now appeals from the circuit court's order and the remaining defendants cross-appeal.

The sole issue presented in the Attorney General's appeal is whether MCL 750.558; MSA 28.826 assigns criminal liability to the fixing of prices for services, as opposed, for example, to the fixing of prices of commodities. The statute provides in its entirety:

*"A trust is a combination of capital, skill or arts by two or more persons, firms, partnerships, corporations or associations of persons, or of any two or more of them, for either, any or all of the following purposes:*

"1. *To create or carry out restrictions in trade or commerce;*

"2. To limit or reduce the production, or increase or reduce the price of, merchandise or any commodity;

"3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity;

"4. To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of

merchandise, produce or commerce intended for sale, barter, use or consumption in this state;

"5. *It shall hereafter be unlawful* for two or more persons, firms, partnerships, corporations or associations of persons, or of any two or more of them to make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they shall bind or have bound themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure or fixed value, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article, commodity, or transportation between them or themselves and others, so as to directly or indirectly preclude a free and unrestricted competition among themselves, or any purchasers or consumers, in the sale or transportation of any such article or commodity, or by which they shall agree to pool, combine, or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected. *Every such trust as is defined herein is declared to be unlawful, against public policy and void:* Provided, however, That nothing contained in the provisions of this section shall be construed to forbid producers of farm or dairy products from co-operating or organizing corporations or associations not primarily for profit, for the purpose of insuring and providing a reasonably certain and stable market for, and distribution of, such products upon terms fair and reasonable to the public and to themselves, and bargaining with distributors of such products singly or collectively in relation thereto, nor shall such co-operative undertaking, corporations, associations or members thereof be held or construed to be illegal combinations or conspiracies in restraint of trade.

"Any violation of the provisions of this section shall be and is hereby declared a conspiracy against trade, and any person who may become engaged in any such conspiracy or take part therein, or aid or advise in its

commission, or who shall as principal, manager, director, agent, servant or employer, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates or furnish any information to assist in carrying out such purposes or orders thereunder or in pursuance thereof, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than two years or by a fine of not more than one thousand dollars. Each day's violation of this provision shall constitute a separate offense.

"In any indictment for any offense named in this and the following section, it is sufficient to state the purpose or effects of the trust or combination, and that the accused is a member of, acted with or in pursuance of it, or aided or assisted in carrying out its purposes, without giving its name or description, or how, when and where it was created.

"In prosecutions under this and the following section, it shall be sufficient to prove that a trust or combination, as defined herein, exists, and that the defendant belonged to it, or acted for or in connection with it, without proving all the members belonging to it, or proving or producing any article of agreement, or any written instrument on which it may have been based; or that it was evidenced by any written instrument at all. The character of the trust or combination alleged may be established by proof of its general reputation as such." (Emphasis added.)[1]

Analyzing the statutory language, the district court observed:

"It is obvious both by a review of the statute and by the acknowledgement of the prosecution that [¶¶] 2, 3 and 4 do not encompass services. It is also clear that ¶ 5 specifically refers to articles, commodities, merchandise,

[1] The original version of the statute was 1899 PA 255, which provided for both criminal and civil actions against restraint of trade. The current civil counterpart of MCL 750.558; MSA 28.826 is MCL 445.701 et seq.; MSA 28.31 et seq. The current criminal statute (MCL 750.558; MSA 28.826) is, for purposes of resolution of the instant controversy, identical to §§ 1, 4, 5, and 6 of 1899 PA 255.

etc., and would not include services. We are then led to the inquiry as to whether services are included under the 'trade or commerce' language of [¶ ] 1."

Even assuming that the phrase "trade or commerce" in ¶ 1 of the statute includes services, however, the court found that the statute does not set forth a general proscription against combinations "to carry out restrictions in trade or commerce". In support of its conclusion that the activity described in the indictment had not been declared criminal, the court offered the following analysis of the statutory language:

"the statute makes a division into 'definitional provisions' and 'conduct provisions'. The first portion of the statute *[i.e.,* ¶¶ 1 through 4] seems clearly to provide a definition. It is of great significance that ¶ 5 commences with the words, 'It shall hereafter be unlawful.' A plain reading would seem to indicate that the placement of those words at the beginning of ¶ 5 would be a clear indication that what went before ¶ 5 was not intended to be unlawful."

The district court went on to discuss the principle of strict construction of criminal statutes, *People v Hall,* 391 Mich 175, 189; 215 NW2d 166 (1974), and the concomitant requirement of statutory clarity:

"It is a fundamental rule of construction of criminal statutes that they cannot be extended to cases not included within the clear and obvious import of their language. And if there is doubt as to whether the act charged is embraced in the prohibition, that doubt is to be resolved in favor of the defendant." *People v Ellis,* 204 Mich 157, 161; 169 NW 930 (1918).

In addition to its own difficulty in ascertaining

the statute's intended scope of coverage, the court observed that the Attorney General, in a November 14, 1978, memorandum to Governor William Milliken analyzing Senate Bill 1284 (a proposed revision of Michigan's antitrust legislation which died in the House Judiciary Committee), had stated that "the present antitrust statute [1899 PA 255] * * * does not provide for coverage of services in the same manner as commodities, transportation and machinery". Also cited was the text of a speech delivered by the assistant attorney general in charge of the consumer protection division of the Department of the Attorney General, in which the "absence of clear coverage of services, rather than just commodities, transportation and machinery" had been noted and advanced in support of adoption of Senate Bill 1254, which "[f]or the first time, [provided] a clear understanding * * * that services, as well as all kinds of commodities and property" were included within the definition of "trade and commerce". (In contrast to the current statute, Senate Bill 1254 clearly set forth a blanket proscription against all contracts, combinations, and conspiracies in restraint of trade or commerce).

The district court further noted the comments made by the chairman of the state bar's antitrust law section:

"[T]he trust or conspiracy sections [of Michigan's current antitrust law] do not appear to apply to the sale of services, only goods and commodities. Services have of course become vastly more significant in modern times. The catch-all general language in the provision of the 1899 act * * * may embrace services, but the other parts of that statute are expressly limited to goods as are the 1889 initial act and the 1905 machinery statute." Alterman, *Toward a New Michigan Antitrust Law,* 55 Mich St Bar J 19, 22 (1976).

Finding that the statutory language did not cover the activity charged in the indictment and, alternatively, that the statute lacked the requisite clarity to support this criminal prosecution, the district court dismissed the indictment. We follow the lead of the circuit court and affirm the district court's order of dismissal.

No Michigan case has addressed the issue of whether the fixing of prices for services was intended to be covered by MCL 750.558; MSA 28.826. In *Hunt v Riverside Co-Operative Club,* 140 Mich 538; 104 NW 40 (1905), the Wayne County prosecutor sought injunctive relief, under 1899 PA 255, against two plumbers' associations—the Master Plumbers' Exchange and the Riverside Co-Operative Club. The members of the association had agreed that the price of plumbers' supplies would be fixed by a committee and that member plumbers would buy all of their supplies from wholesale members, who agreed to sell only to qualified master plumbers and to charge nonmembers more than members. The master plumbers agreed not to sell their labor or materials at prices below those fixed by the club's schedule, and members of the exchange agreed that, in bidding for contract work, they would estimate materials and labor at specified levels. The Supreme Court affirmed the circuit court's determination that a violation of the statute had been established.

The Attorney General argues that the district court's order in the instant case is at odds with the Supreme Court's decision in *Hunt.* Careful scrutiny of the Supreme Court's opinion, however, reveals the Court's exclusive concern with the effects of the defendants' agreements on the price of plumbing supplies. The Court expressly declined to determine whether the statute prohibits con-

tracts fixing installation charges. *Hunt v Riverside Co-Operative Club, supra,* pp 546-547. Mere characterization of the plumbing industry as a "service industry" is not dispositive of the issue raised in the instant case.

Also cited by the Attorney General is *Barrows v Grand Rapids Real Estate Board,* 51 Mich App 75; 214 NW2d 532 (1974), *app dis* 392 Mich 752 (1974), a civil action for injunctive relief against restraint of trade and monopoly. MCL 445.701; MSA 28.31, MCL 445.762; MSA 28.62. The *Barrows* case was discussed in Alterman, *supra,* 55 Mich St Bar J, p 22, fn 14.

> *"Barrows v Grand Rapids Real Estate Board,* 51 Mich App 75 (1974), challenged an exclusion from a real estate multiple listing service under the catch-all language in the 1899 act and the general language of the conspiracy to monopolize section of the 1905 monopoly statute. The court found the restraint reasonable. It did not discuss whether services are embraced by the catch-all provision of the 1899 act, perhaps because services are included in the monopoly conspiracy section of the 1905 act."

In the above-mentioned speech, the assistant attorney general also mentioned the insufficient clarity of the *Barrows* decision as it related to the issue of the coverage of agreements to fix the price of services. In addition, we note that *Barrows* was a civil, not a criminal, proceeding.[2]

Cases which discuss Michigan's antimonopoly statute, MCL 445.762; MSA 28.62, are inapposite, since the language of that statute differs significantly from the language of MCL 750.558; MSA 28.826. For the same reason, cases discussing the

---

[2] See also *Michigan Ass'n of Psychotherapy Clinics v Blue Cross and Blue Shield of Michigan (After Remand),* 118 Mich App 505; 325 NW2d 471 (1982).

federal antitrust law, the Sherman Act, 15 USC 1 *et seq.,* are not helpful to resolution of the instant controversy. The narrow issue presented is construction of the language in the Michigan criminal statute.

The district court's determination that only those activities described in § 5 of MCL 750.558; MSA 28.826 were intended to be proscribed finds support in the early Texas case of *Queen Ins Co v State,* 86 Tex 250; 24 SW 397 (1893). With a few significant additions, the language of the 1899 Michigan statute echoed the 1889 Texas act. The Texas court described the economic climate which had prompted many states to enact antitrust legislation and identified

"the causes of popular discontent, and the evils which the Legislatures of several states sought to remedy by direct statutory enactments upon the subject. They were combinations organized for the purpose of affecting the prices of articles of prime importance in commerce, or the rates of transportation and intercommunication. The evils resulting from these operations were doubtless paramount in the minds of our legislators when they passed the statute under consideration; and it was to repress these practices that the law was enacted. By 'the plain import of its language' it makes unlawful all combinations to raise or depress the price of all articles of commerce whatever, or to increase or diminish the rates of transportation of such articles." 86 Tex 266-267; 24 SW 402.

The Texas court analyzed the language of the statute as follows:

"It seems to us, therefore, that the words in the first subdivision of section 1 of the act 'to create or carry out restrictions in trade,' were intended only as a general expression of the purpose of the law, and that the acts defined in the subsequent members of the section were

intended as a specific definition of what was meant in the first." 86 Tex 267; 24 SW 402.

The court concluded that the Texas statute was not intended to reach agreements fixing rates of insurance and insurance agents' commissions.

In Michigan, the Legislature prefaced ¶ 5 of MCL 750.558; MSA 28.826, in both its present and original versions, with an express declaration of the prospective illegality of the activity described in that paragraph and reiterated that declaration at the conclusion of the original version of ¶ 5. (This latter declaration is now found in the body of ¶ 5.) It is reasonable to presume some intentionality in the insertion of this additional language. The task of the courts in interpreting the statute is to discern the intent of the Legislature at the time of passage of the statute. *Detroit Edison Co v Dep't of Revenue,* 320 Mich 506, 519; 31 NW2d 809 (1948). It is reasonable to conclude that the Michigan Legislature in 1899 was concerned with remedying the evils of only those activities in ¶ 5 of MCL 750.558; MSA 28.826.

While the district court's construction of the statute is persuasive, we affirm on the narrower ground of the statute's unquestionable lack of the clarity required of criminal statutes. The language of MCL 750.558; MSA 28.826 does not clearly and obviously embrace the activities with which the defendants have been charged. While the Legislature's intention may have been to prohibit all agreements which unreasonably restrain trade or commerce, the prefatory language of ¶ 5 provides strong support for a more restrictive interpretation of the statute. Similarly, while the statement in ¶ 5 that "Every such trust as is defined herein is declared to be unlawful, against public policy and void" may constitute a legislative declaration of

the criminality of all combinations described in ¶¶ 1 through 5, ¶ 5's prefatory language and the general structure of the statute indicate otherwise. It is equally reasonable to construe ¶¶ 1 through 4 as statements of definition, general description, and purpose.

We are constrained to resolve the doubtful state of the statutory language in defendants' favor. *People v Ellis, supra,* p 161. The Attorney General has himself recognized the statute's ambiguity and urged passage of new legislation to remedy its inadequacies. We agree with defendants that the Attorney General's pursuit of this criminal prosecution has been less than admirable and we affirm dismissal of the indictment. It is, therefore, unnecessary to address the issues raised on cross-appeal.

Affirmed.