[No. 25253. Department Two. March 18, 1935.]

CARTIER DRUG COMPANY, *Respondent,* v. MARYLAND CASUALTY COMPANY OF BALTIMORE, MARYLAND, *Appellant.*[1]

[1]Reported in 42 P. (2d) 37.

*Roy E. Bigham,* for appellant.
*S. A. Gagliardi,* for respondent.

BLAKE, J.—The plaintiff owns and operates a drug store at 2156 south "K" street, in the city of Tacoma. December 17, 1930, the defendant wrote an insurance policy by which it agreed to indemnify plaintiff for loss "by robbery or attempt thereat" committed within or without the above described premises. By the terms of the policy, defendant's liability was limited to five hundred dollars for robbery committed *within* the premises, and to one thousand dollars for robbery committed *without.* At all times with which we are concerned, this policy was in full force and effect.

Ross T. Cartier was president of plaintiff corporation. At about eleven p. m., November 28, 1933, Cartier locked the door of the store, turned off the window lights, and retired to the rear of the store, where he was engaged until two a. m., checking cash and posting his books. He had approximately one thousand dollars. Of this, he put $530 in the safe. The balance, amounting to $473.57, he put in his pocket.

He went to the door, unlocked it, stepped out, closed the door and locked it on the outside. As he was turning from the door, he was confronted by two men, one of whom, at least, had a revolver. While one held a revolver to Cartier's head, the other searched him for weapons by running his hands over the outside of his clothes. The money he carried was not then taken from him or handled by the robbers.

He was then forced to unlock the door. The robbers took him back to the safe, and compelled him to open it. They took all the money there was in the safe, and

started to go out by the back door. As one was opening the back door, Cartier attempted to get to his own gun. The other robber intercepted and slugged him, and then took the $473.57 which Cartier had on his person.

Plaintiff laid claim with the insurance company for $973.57. This claim is predicated upon the theory that the robbery of the $473.57 taken from the person of Cartier was committed outside the premises. The defendant does not question its liability to the extent of five hundred dollars—the limit under the policy for an inside robbery. It takes the position, however, that the entire loss was the result of a robbery *inside* the premises. The only question, therefore, is whether, under the terms of the policy, plaintiff is entitled to recover on account of the $473.57 taken from the person of Cartier. The trial court held that it was, and entered judgment for plaintiff for $973.57. Defendant appeals.

From a memorandum opinion, it appears that the trial court was of the view that what occurred prior to the time that Cartier unlocked the door, at the command of the robbers, constituted an "attempt at robbery," under the terms of the policy. We do not think the trial court's decision on this theory is tenable for two reasons: (1) The robbery was, in fact, consummated in an unbroken sequence of events, during which Cartier was at all times put and held in fear of violence; (2) under Cartier's own testimony, it appears that the search of his person, made outside the door, amounted to nothing more than a "frisking" — a search for weapons by the running of hands over the victim's clothes. No attempt was there made to go through Cartier's pockets, or to take anything from his person.

The sole question in the case, as we see it, is: At

what place was Cartier robbed of the $473.57?

In the administration of criminal law, two distinct elements are held to be necessary to the crime of robbery: (1) Putting the victim in fear of violence to his person or property; and (2) the taking of money, property, or thing of value from his person or in his presence.

■ Whatever the crime may be, under any state of facts where one of such elements exists and the other does not, it is not robbery. The first element being present, the crime of robbery is consummated only when the victim is deprived of dominion over his money or property. Respondent contends that he lost dominion over the money at the moment the robber put the gun to his head. The argument is to the effect that, his person having been subjected to the dominion and control of the robbers, everything upon his person was likewise under their dominion and control.

We do not think the argument is sound, and we do not find it supported by authority. When one is captured by robbers and put in fear of violence in one jurisdiction, and is thereafter (being continuously subjected to fear of violence) removed to another jurisdiction, where money, property, or thing of value is taken from him, the crime of robbery is consummated in the latter jurisdiction, and there is where the venue lies for the prosecution of the crime. *Sweat v. State,* 90 Ga. 315, 17 S. E. 273; *State v. McAllister,* 65 W. Va. 97, 63 S. E. 758, 131 Am. St. 955.

■ But, says respondent, this is a rule applied in criminal cases, and is not applicable in an action on an insurance policy, where, under universal authority, the contract is construed strictly against the insurer. Conceding the rule of construction, still we are not at liberty to write a new contract for the parties. So far

as pertinent to this inquiry, the policy defines robbery as follows:

"Robbery, within the meaning of this policy, is limited to a felonious and forcible taking of property— (a) By violence inflicted upon the custodian or custodians in the actual care and custody of the property at the time; or (b) by putting such custodian or custodians in fear of violence; or (c) by an overt felonious act committed in the presence of such custodian or custodians and of which they were actually cognizant at the time . . ."

In *Fox West Coast Theatres, Inc. v. Union Indemnity Co.*, 167 Wash. 319, 9 P. (2d) 78, this court, considering a policy with identical provisions, held that, although the custodians of property were held prisoners for three hours, the robbery was not consummated until the custodians disclosed to the robber the combination of the safe from which the money was taken. To our minds, the cited case is indistinguishable in principle from the case at bar. It effectually holds that the crime of robbery is not complete until the money is taken.

Respondent cites the following cases as holding to the contrary: *Allen Lubricating Co. v. Phoenix Indemnity Co.*, 157 Wash. 295, 288 Pac. 906; *MacGruer v. Fidelity & Casualty Co.*, 89 Cal. App. 227, 264 Pac. 501. We do not think these cases bear close enough analogy to the instant case to call for analysis.

It is clear to us that, under the terms of the policy, the entire loss sustained by respondent was occasioned by robbery committed within its premises.

The judgment is modified and the cause is remanded, with directions to enter judgment for respondent in the sum of five hundred dollars.

MILLARD, C. J., HOLCOMB, STEINERT, and BEALS, JJ., concur.