SAKS *v.* ST. PAUL MERCURY INDEMNITY COMPANY.

1. ROBBERY—STATUTES—ELEMENTS OF ROBBERY ARMED.
   The offense of "robbery armed," as set forth in the penal code, requires that there be an assault of another and the stealing or taking away money or other property from his person or in his presence (Act No. 328, § 529, Pub. Acts 1931).

2. INSURANCE—INDEMNITY FOR ROBBERY INSIDE OF PREMISES.
   In action by cafe owner under indemnity policy covering robbery inside of premises, where three armed, masked men approached plaintiff, his wife and headwaiter after they had closed the cafe at 2 a.m. to get out of their cars and re-enter cafe where robbers assaulted plaintiff and finally ascertained that cafe money had been left in wife's purse in a car, obtained the purse, brought it back into the cafe, and took the money out of the purse while in the cafe, they committed the crime of robbery armed while in the cafe since the crime was not consummated until the money had been appropriated by the robbers and taken away (Act No. 328, § 529, Pub. Acts 1931).

3. ROBBERY—FAILURE TO CONSUMMATE—ATTEMPT.
   If person assaulted by armed robbers prevents their taking of his money or property away, the crime of robbery armed would not be consummated, it being an attempt only (Act No. 328, § 529, Pub. Acts 1931).

WIEST and SHARPE, JJ., dissenting.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 6, 1944. (Docket No. 45, Calendar No. 42,678.) Decided May 17, 1944.

Assumpsit by David Saks against St. Paul Mercury Indemnity Company, a Delaware corporation,

on a robbery policy. Judgment for plaintiff. Defendant appeals. Affirmed.

*Drexelius, Helper & Marks* (*O'Brien & Nertney,* of counsel), for plaintiff.

*Frederick J. Ward,* for defendant.

BOYLES, J. Plaintiff brought suit against the defendant indemnity company to recover for money taken from plaintiff by robbers, for the loss of which plaintiff claims to have been indemnified by the defendant in a robbery policy. The case was submitted to the circuit court for Wayne county on a stipulation of facts, the circuit judge filed a written opinion finding for plaintiff, and entered judgment against defendant for $765. The only ground urged by defendant for reversal is that the policy of insurance on which suit was based does not cover the loss sustained by plaintiff, under the agreed facts.

Prior to November 30, 1941, plaintiff leased from the Kahn Realty Company the premises described in said lease as "store known as 8231 Woodward avenue," Detroit, Michigan. On September 15, 1941, there was issued to plaintiff by defendant a mercantile robbery and safe burglary policy for a period of one year, correctly describing the location of the premises. That part of the policy under consideration insuring plaintiff against loss by robbery inside the premises is as follows:

"Robbery Inside Premises. II To indemnify the insured (if insurance is provided under sections (c) or (d) or item 7 of the declarations but not otherwise) for all loss or damage (hereinafter called loss) to such property while in the premises, and for damage to the premises if the insured is the owner thereof or is liable for such damage, provided such loss is occasioned by:" (robbery)

Item 7, section (c), referred to above, reads:

"Within the designated premises while at least one custodian is on duty therein."

No issue is raised as to whether there was a custodian on duty at the time of the loss. Defendant bases its claim that the loss is not covered by the policy on paragraph A in the policy under the heading "This policy is subject to the following agreements, limitations and conditions," which described "premises" as follows:

"Premises means the interior of that portion of the building designated in item 3 of the declarations which is occupied solely by the insured in conducting his business."

In short, defendant claims that it is not liable because the loss did not occur inside the building.

The Saks Cafe, operated by the plaintiff and described in said policy, is a night club so-called. On November 30, 1941, at about 2 a.m., plaintiff had closed his place of business, had counted the day's receipts, segregated the money for business purposes into four different envelopes, and after the money had been thus segregated it was turned over to plaintiff's wife who put it in her purse. The total amount of the cafe money was $1,185.50. Besides this, she had other money belonging to herself in the purse. At the time of closing the place of business and while the money was being counted, the plaintiff, his wife, the headwaiter, and the night watchman were in the cafe. Having completed the counting of the money and turning it over to Mrs. Saks, the parties went out of the cafe to get into their cars which were parked in the driveway on the north side of the building. When Mr. Saks and the other parties left the cafe to go to their cars, they left by the side door. Mrs. Saks and the headwaiter left ahead of Mr. Saks and were in their cars waiting for him.

Mr. Saks got into the car after the door of the cafe, by which he had left, had closed and automatically locked. Then three masked men came up, exhibited guns and forced all parties to get out of their cars and re-enter the cafe. They returned to the cafe by the same side door from which they had left.

After re-entering the cafe, one of the robbers took the plaintiff into the cafe kitchen and cross-examined him as to where the money was. Although plaintiff's wife had put all the money from the cafe business into her purse and had left her purse with the money in it in the car, plaintiff thought the robbers had taken her purse at the time they made them get out of the car. While the one robber was questioning the plaintiff in the cafe kitchen, another one had forced the night watchman to lie on the floor in the main part of the cafe and had the headwaiter standing with his face to the wall. The remaining robber was questioning plaintiff's wife.

Plaintiff did not know that the money was still in the car and kept insisting he did not have any more money. The robber watching plaintiff struck him on the side of the head with his revolver. Plaintiff's wife heard the blow and told the one with her that the money was in her purse in the car. Thereupon the robber who was questioning plaintiff's wife went out to the car, got the purse and the money and brought it back into the cafe. He took the money out of the purse and kept it. He left the purse on a table, called the other robbers and they all left the cafe.

While the robbers were questioning Mr. Saks in the kitchen, they made continuous threats of bodily harm to all of the parties if they did not divulge the whereabouts of the money. They were very loud in their threats and inflicted a gash in the head of the plaintiff. After the robbers had removed the money

from the purse they threatened all parties with bodily harm if they made any outcry as the robbers ran from the building. The amount taken by the robbers was in excess of $1,000. The policy of insurance limited recovery to a loss of $700, so that the maximum amount that could be recovered by plaintiff would be $700 plus interest.

The stipulation of facts which we find in the record recites that a copy of the policy is thereto annexed. There is no copy of the policy in the record. However, the circuit judge in his opinion found, and the statement is not controverted, that "robbery" is defined in the policy as "the felonious and forcible taking of insured property." Defendant makes no claim that the offense shown by the facts does not constitute the crime of robbery. Under our statutes, an essential element of robbery armed is assaulting another and stealing or taking away money or other property from his person *or in his presence.* Act No. 328, § 529, Pub. Acts 1931 (Michigan penal code) (Comp. Laws Supp. 1940, § 17115–529, Stat. Ann. § 28.797).

This is a case of first impression in this State. Counsel for defendant relies on *Axt* v. *London & Lancashire Indemnity Company of America* (C. C. A.), 131 Fed. (2d) 370. Plaintiff relies on *Cartier Drug Co.* v. *Maryland Casualty Company of Baltimore, Maryland,* 181 Wash. 146 (42 Pac. [2d] 37). The facts in the latter case are quite similar to those in the instant case and the reasoning of the court is convincing. The court said:

"The sole question in the case, as we see it, is: At what place was Cartier robbed of the $473.57? In the administration of criminal law, two distinct elements are held to be necessary to the crime of robbery: (1) Putting the victim in fear of violence to his person or property; and (2) the taking of money,

property, or thing of value from his person or in his presence.

"Whatever the crime may be, under any state of facts where one of such elements exists and the other does not, it is not robbery. The first element being present, the crime of robbery is consummated only when the victim is deprived of dominion over his money or property."

The money taken in the instant case by the robbers was the property of Mr. Saks, not his wife's property. The offense of robbery armed was perpetrated against Mr. Saks, in his presence, inside the building, when the robber removed his money from his wife's purse and took it away. The crime was not consummated until the whereabouts of the money had been disclosed, it had been taken into the building, appropriated by the robbers and taken away. If Mr. Saks had been able to prevent the taking away of the money, after it had been returned to the building, the crime of robbery armed would not have been consummated. It would have been an attempt, only. The crime of robbery armed was committed inside the building, within the meaning of the policy.

We conclude that plaintiff's loss is within the coverage of the policy. Judgment affirmed.

NORTH, C. J., and STARR, BUTZEL, BUSHNELL, and REID, JJ., concurred with BOYLES, J.

SHARPE, J. (*dissenting*). I am not in accord with the holding of Mr. Justice BOYLES that the offense of robbery against Mr. Saks was not consummated until the money had been returned to the building and taken away by the robbers.

In *Cartier Drug Co.* v. *Maryland Casualty Company of Baltimore, Maryland,* 181 Wash. 146 (42

Pac. [2d] 37), cited in Justice BOYLES' opinion, plaintiff was the owner of a drug store. The policy indemnified plaintiff for loss "by robbery or attempt thereat" committed within or without the described premises. By the terms of the policy defendant's liability was limited to $500 for robbery committed within the premises, and $1,000 for robbery committed without. On the night in question plaintiff locked his store and was held up by two robbers. He was forced to unlock the store and all went inside. While there the robbers compelled plaintiff to open the safe and took therefrom about $530, and then took about $473 from the person of plaintiff. The sole question in the case is at what place was plaintiff robbed of the $473. The court held that the robbery was committed within the store and that the crime of robbery was not completed until the money was taken.

In *Axt* v. *London & Lancashire Indemnity Company of America* (C. C. A.), 131 Fed. (2d) 370, plaintiff was insured against robbery by a policy which defined robbery as "a felonious and forcible taking of property by violence inflicted upon a custodian, or by putting him in fear of violence." The premises were defined as follows: "Rooms 211–213, M and M Bank Building." While the policy was in effect plaintiff, a diamond merchant, was visited by three robbers, who forced him out of room 213, across room 211, and into room 212, and there robbed him of certain diamonds. The court there said:

" 'Premises', as defined in the policy, means the interior of Rooms 211 and 213, M and M Bank Building, which were occupied solely by the assured in conducting his business. When the diamonds were taken by the robbers from the person of the plaintiff, they were not in the interior of Rooms 211 and 213. They were inside Room 212, over which the plaintiff

had no control. Since this part of the robbery was outside the interior of Rooms 211 and 213 of the M and M Bank Building, it was outside the premises of the plaintiff and inside the premises over which the plaintiff had no control, and therefore it was a robbery outside the premises within the meaning of the policy.''

In the *Cartier Drug Company Case, supra,* the court held that the robbery took place where the robbers gained possession of the money; and in the *Axt Case, supra,* the robbery took place in the room where the possession and control of the diamonds were transferred to the robbers.

In the case at bar the robbers took possession of the money while it was in the automobile. They never released possession of it, even after it had been returned to the store. Plaintiff lost possession and control of it while it was outside of the premises. The indemnity bond provides for loss or damage to property while in the premises. The loss having been occasioned outside the premises, there can be no recovery on the bond.

The judgment should be reversed, with costs to defendant.

WIEST, J., concurred with SHARPE, J.