PEOPLE v WILLIAMS

Docket No. 284585. Submitted August 5, 2009, at Grand Rapids. Decided
    April 8, 2010, at 9:00 a.m.

Glenn T. Williams was charged in the Muskegon Circuit Court,
    Timothy G. Hicks, J., with the armed robberies of a Clark gas
    station and an Admiral tobacco shop. He pleaded nolo contendere
    with regard to the Clark gas station incident and guilty with
    regard to the Admiral tobacco shop incident, and was sentenced.
    He then moved to withdraw his pleas. Defendant alleged that the
    factual foundation for each plea was not sufficiently established
    because, with regard to the Admiral incident, there was no
    evidence that defendant committed a completed larceny, and with
    regard to the Clark incident, defendant was not adequately iden-
    tified as the robber. The trial court denied the motion. The Court
    of Appeals, in an unpublished order, entered June 16, 2008 (Docket
    No. 284585), granted defendant's delayed application for leave to
    appeal, but only with regard to the conviction for the Admiral
    incident and "on the issue of a completed larceny only." The
    Supreme Court denied defendant's application for leave to appeal.
    482 Mich 1035 (2008).

    The Court of Appeals held:

    1. The trial court did not err by accepting defendant's guilty
plea in regard to the Admiral incident, although there was no proof
or evidence of a completed larceny. MCL 750.529, defining armed
robbery, and MCL 750.530, defining robbery, after their amend-
ment by 2004 PA 128, now encompass attempts. As a result, a
completed larceny is no longer required for a conviction of armed
robbery.

    2. The armed robbery statute, MCL 750.529, requires that a
defendant be engaged in conduct proscribed under the robbery
statute, MCL 750.530. For robbery to rise to the level of an armed
robbery, § 529 requires that the individual possess a dangerous
weapon or an article used or fashioned in a manner to lead any
person to reasonably believe the article is a dangerous weapon, or
to represent orally or otherwise that he or she is in possession of a
dangerous weapon. Here, defendant admitted acting in a manner
to suggest to the Admiral store clerk that he possessed a weapon.

3. The conduct proscribed by § 530 is the use of force or violence while in the course of committing a larceny of any money or other property that may be the subject of larceny. The phrase "in the course of committing a larceny" in § 530 "includes acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." Therefore, the crime of armed robbery now also encompasses attempts to commit that offense. The statutory language specifically considers and incorporates acts taken in an attempt to commit a larceny, regardless of whether the act is completed. Acts taken in the process of committing a larceny necessarily include steps or behaviors occurring at any point in the continuum, despite whether they are successfully completed.

4. Defendant admitted representing to the Admiral clerk that he was in possession of a weapon and that he had the intent to take or obtain money from the store's cash register. It was not established that defendant had any intention to harm the clerk. While defendant left the store without any money from the cash register, sufficient elements of the crime were established to sustain his conviction.

Affirmed.

GLEICHER, J., dissenting, stated that the Legislature did not intend by amending MCL 750.529 in 2004 to fundamentally alter the elements of the offense by eliminating the requirement of a completed larceny. Under the common law, the crime of robbery included as an essential element the commission of a larceny. Neither MCL 750.529 nor MCL 750.530 contains definite, clear, or plain language showing the Legislature's intent to fundamentally alter the common law. The plain language of § 530 refutes that the robbery statute, as amended in 2004, permits a conviction without proof of a completed larceny. The Legislature sought to make clear that robbery encompasses acts that occur before, during, and after the larceny, not that the Legislature intended to eliminate larceny as an element of the crime. Here, no evidence exists that defendant committed a larceny during the Admiral incident. Therefore, the trial court abused its discretion by denying defendant's motion to withdraw the plea in the Admiral matter. The conviction and sentence with regard to the Admiral incident should be vacated.

CRIMINAL LAW — ARMED ROBBERY — ROBBERY — ATTEMPTS TO COMMIT LARCENY.

The statutes defining armed robbery and robbery, after their amendment by 2004 PA 128, encompass attempts; a completed larceny is no longer required for a conviction of armed robbery or robbery;

the statutory language specifically considers and incorporates acts taken in an attempt to commit a larceny, regardless of whether the act is completed; acts taken in the process of committing a larceny necessarily include steps or behaviors occurring at any point in the continuum, despite whether they are successfully completed (MCL 750.529, 750.530).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Charles F. Justian*, Chief Appellate Attorney, for the people.

*Peter Ellenson* for defendant.

Before: OWENS, P.J., and TALBOT and GLEICHER, JJ.

TALBOT, J. We granted defendant's delayed application for leave to appeal[1] the trial court's denial of his request to withdraw his guilty plea to a charge of armed robbery. MCL 750.529. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 24 to 40 years' imprisonment. We affirm.

I. FACTUAL AND PROCEDURAL HISTORY

Defendant was initially charged with two separate armed robberies, which occurred on consecutive days at different locations involving a Clark gas station and an Admiral tobacco shop. As part of a "package" deal, defendant pleaded nolo contendere with regard to the Clark gas station charge and guilty with regard to the Admiral tobacco shop charge. Difficulties were encountered when the trial court tried to establish a factual

---

[1] *People v Williams*, unpublished order of the Michigan Court of Appeals, entered June 16, 2008 (Docket No. 284585). Our Supreme Court denied defendant's subsequent application for leave to appeal. *People v Williams*, 482 Mich 1035 (2008).

basis for defendant's pleas. In this appeal, we are interested solely in defendant's plea in the Admiral tobacco shop case.

With regard to the Admiral tobacco shop, defendant acknowledged that his intent, upon entering the store, was to steal money. Defendant also admitted that he had placed his hand "up under" his coat, suggesting the possession of a weapon, and told the clerk, "[Y]ou know what this is, just give me what I want." The trial court accepted the plea finding it "to be knowing, voluntary, understanding, and accurate." Subsequently, defendant was sentenced to 24 to 40 years' imprisonment for that armed robbery.

Approximately one year after the pleas were accepted and six months after being sentenced, defendant filed a motion seeking to withdraw his pleas. Defendant argued that his plea in the Admiral tobacco shop case was deficient because there was no demonstration or showing that defendant actually took any property from the store. Following the submission of additional briefs, the trial court issued a written opinion and order denying defendant's motion to withdraw his pleas. This appeal ensued.

## II. STANDARD OF REVIEW

The issue before this Court can be summarized as whether a completed larceny is necessary to sustain a conviction for armed robbery, pursuant to MCL 750.529. Consequently, the outcome of this appeal is completely dependent on the statutory language comprising MCL 750.529 and MCL 750.530. It is well recognized:

"[T]he interpretation and application of statutes is a question of law that is reviewed de novo." *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). The primary goal

of statutory interpretation is to give effect to the intent of the Legislature. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The objective of statutory interpretation is to discern the intent of the Legislature from the plain language of the statute. *People v Sobczak-Obetts*, 463 Mich 687, 694-695; 625 NW2d 764 (2001). "We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). In doing so, we must be mindful that "[i]t is the role of the judiciary to interpret, not write, the law." *People v Schaefer*, 473 Mich 418, 430-431; 703 NW2d 774 (2005), clarified in part on other grounds *People v Derror*, 475 Mich 316, 320 (2006). [*People v Barrera*, 278 Mich App 730, 735-736; 752 NW2d 485 (2008).]

This Court also reviews de novo as a question of law whether specific conduct falls within the prohibitions of a statute. *People v Adkins*, 272 Mich App 37, 39; 724 NW2d 710 (2006). Relevant to this appeal, we would further note that there exists no absolute right to withdraw a guilty plea, which decision is within the trial court's discretion. *People v Ovalle*, 222 Mich App 463, 465; 564 NW2d 147 (1997).

### III. ANALYSIS

The four statutes pertaining to robbery are contained within chapter LXXVIII of the Michigan Penal Code.[2] In this appeal, we are concerned with the statutes pertaining to robbery and unarmed robbery following their legislative revision in 2004 PA 128. Specifically, MCL 750.529, defining armed robbery, currently provides:

---

[2] Specifically: MCL 750.529 (armed robbery), MCL 750.529a (carjacking), MCL 750.530 (robbery), and MCL 750.531 (bank robbery).

A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

Robbery is defined within MCL 750.530, which states:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

(2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

It must be determined, on the basis of these recent revisions, whether a perpetrator must actually commit a completed larceny to be convicted of an armed robbery.[3] Specifically, with reference to the issue on appeal, we must address whether the trial court erred by accepting defendant's guilty plea to the offense of armed robbery when there was no proof or evidence of a completed larceny. We find that the statutory lan-

---

[3] Larceny is defined as: "The unlawful taking and carrying away of someone else's personal property with the intent to deprive the possessor of it permanently." Black's Law Dictionary (8th ed).

guage now encompasses attempts and that, as a result, a completed larceny is no longer required for a conviction of armed robbery.[4]

It is undisputed that MCL 750.529 and MCL 750.530 must be read together because armed robbery requires that a person be "engage[d] in conduct proscribed under [MCL 750.530]." MCL 750.529. In addition, for a robbery to rise to the level of an armed robbery, MCL 750.529 requires that the individual "possess[] a dangerous weapon or an article used or fashioned in a manner to lead any person . . . to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon . . . ." Notably, defendant acknowledged during his plea hearing that he acted in a manner to suggest to the store clerk that he possessed a weapon. Hence, the issue before us is restricted solely to whether a larceny must be completed for defendant's armed robbery conviction to stand.

Clearly, other than separately requiring the existence or representation of the presence of a weapon, the crime of armed robbery is restricted to the "conduct proscribed under section 530 . . . ." MCL 750.529. In turn, MCL 750.530 indicates that the conduct "proscribed" is the use of "force or violence" while "in the course of committing a larceny of any money or other property that may be the subject of larceny . . . ." Our analysis must focus on the definition, contained in MCL 750.530(2), of the phrase "in the course of committing a larceny," which "includes acts that occur *in an attempt to commit the larceny, or* during the commission of the larceny, *or* in flight or attempted flight after the commission of the larceny, *or* in an attempt to retain

---

[4] In contrast, the dissent finds that the absence of a completed larceny precludes a conviction under the statute.

possession of the property."[5] (Emphasis added.) This Court has no alternative but to strictly adhere to the language used by the Legislature in revising this statute and not seek to attribute either motive or reasoning beyond the plain and ordinary meaning of the wording chosen for use. As such, the crime of armed robbery now also encompasses attempts to commit that offense.

"Where, as here, a statute supplies its own glossary, courts may not import any other interpretation, but must apply the meaning of the terms as expressly defined." *Detroit v Muzzin & Vincenti, Inc*, 74 Mich App 634, 639; 254 NW2d 599 (1977). When dealing with statutory language, it is a well-defined precept that,

> [w]hile courts may decide the validity of statutes and ordinances and construe laws in order to determine the actual legislative intent, the duty of the courts, both with respect to city ordinances and with respect to enactments of the legislature, is merely to interpret and apply the law as it is found to be. They cannot, under the guise of construction, redraft, or change the plain phrasing of the legislative fiat. They may not legislate, nor undertake to compel legislative bodies to do so. [1 Michigan Pleading & Practice (2d ed) § 2:28, pp 125-127.]

In other words,

> when a statute specifically defines a given term, that definition alone controls. Therefore, a statutory definition supersedes a commonly accepted dictionary or judicial definition of a term. [22 Michigan Civil Jurisprudence (2005 revision), § 202, p 731.]

---

[5] The dissent elects to interpret this provision to indicate merely the legislative reinstitution of a transactional approach that would allow an armed robbery to be charged if a weapon, or the threat of a weapon, is used at any point in the continuum of the completion of a larceny. Interpreted in this manner, a completed larceny is a necessary component to meet the statutory definition.

The legislative definition of "in the course of committing a larceny" specifically "includes acts that occur in an attempt to commit the larceny . . . ." The term "attempt," which is not defined within the statute, is recognized to mean:

> **1.** The act or an instance of making an effort to accomplish something, esp. without success. **2.** *Criminal law.* An overt act that is done with the intent to commit a crime but that falls short of completing the crime. • Attempt is an inchoate offense distinct from the attempted crime. Under the Model Penal Code, an attempt includes any act that is a substantial step toward commission of a crime, such as enticing, lying in wait for, or following the intended victim or unlawfully entering a building where a crime is expected to be committed. [Black's Law Dictionary (8th ed.).]

As such, the statutory language specifically considers and incorporates acts taken in an attempt to commit a larceny, regardless of whether the act is completed. This is consistent with the language of MCL 750.530(2), which distinguishes, by the use of the word "or," acts committed in "an attempt to commit the larceny" from those acts occurring "during the commission of the larceny" or any subsequent acts comprising flight or efforts to retain any property. The term "or" is "used to connect words, phrases, or clauses representing alternatives." *Random House Webster's College Dictionary* (1997). Hence, an attempt to commit a larceny comprises a separate and distinct action and is not merely a component of a completed larceny. In addition, we would note that MCL 750.530(2) defines "in the course of committing *a* larceny" (emphasis added) and not "*the* larceny." The term "a larceny" denotes a more generic, non-specific or generalized act. The fact that the term "the larceny" is subsequently used within this subsection of the statute merely denotes a reference back to the more generalized "a larceny." Logically, acts taken

in the process of committing a larceny necessarily include steps or behaviors occurring at any point in the continuum, despite whether they are successfully completed. This language necessarily demonstrates the Legislature's intent to include attempts to commit a larceny, both by implication and by the specific language contained in this statutory provision.

Consistent with the statutory language, which expands the crime of armed robbery to include attempts, is the recently revised criminal jury instruction relating to this crime.[6] The language of the criminal jury instruction pertaining to armed robbery is clearly consistent with the language of MCL 750.529 and MCL 750.530, providing:

> (1) The defendant is charged with the crime of armed robbery. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> (2) First, the defendant [used force or violence against / assaulted / put in fear] *[state complainant's name].*
>
> (3) Second, the defendant did so while [he / she] was in the course of committing a larceny. A "larceny" is the taking and movement of someone else's property or money with the intent to take it away from that person permanently.
>
> "In the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property or money.
>
> (4) Third, *[state complainant's name]* was present while defendant was in the course of committing the larceny.
>
> (5) Fourth, that while in the course of committing the larceny, the defendant:

---

[6] We recognize that use of the standard criminal jury instructions is not mandatory and they are not binding authority. *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985).

*[Choose one or more of the following as warranted by the charge and proofs:]*

(a) possessed a weapon designed to be dangerous and capable of causing death or serious injury; [or]

(b) possessed any other object capable of causing death or serious injury that the defendant used as a weapon; [or]

(c) Possessed any [other] object used or fashioned in a manner to lead the person who was present to reasonably believe that it was a dangerous weapon; [or]

(d) represented orally or otherwise that [he / she] was in possession of a weapon.

*[Add the following paragraph if appropriate:]*

(6) Fifth, the defendant inflicted an aggravated assault or serious injury to another while in the course of committing the larceny. [CJI2d 18.1 (footnotes omitted).]

An "attempt" is defined within this section of the criminal jury instructions as having "two elements":

First, the defendant must have intended to commit the crime. Second, the defendant must have taken some action toward committing the alleged crime, but failed to complete the crime. . . . In order to qualify as an attempt, the action must go beyond mere preparation, to the point where the crime would have been completed if it had not been interrupted by outside circumstances. To qualify as an attempt, the act must clearly and directly be related to the crime the defendant is charged with attempting and not some other goal. [CJI2d 18.7.]

Clearly, the criminal jury instructions have specifically been revised to fully coincide with the statutory language of MCL 750.529 and MCL 750.530[7] and to include a definition of the term "attempt" separate from the more general instruction of a crime comprising an attempt. CJI2d 9.1.

---

[7] "This revised instruction is intended to set forth the elements of the armed robbery offense created by 2004 PA 128, effective July 1, 2004, MCL 750.529." Commentary following CJI2d 18.1.

We would note that the immediate prior version of the relevant statute, MCL 750.529, before its amendment by 2004 PA 128, read:

> Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony . . . .

In revising this language, the Legislature not only recognized the actual possession of a weapon or representation by a criminal that he or she is armed, irrespective of the actual presence of a weapon, but also removed the language mandating the actual behavior of to "rob, steal and take . . . ." Had the Legislature not intended a broader revision of the statute, this language could have remained untouched. In addition, the revised language helps to delineate this offense from assault with the intent to rob and steal while armed, MCL 750.89, which statute provides:

> Assault with intent to rob and steal being armed—Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years.

Hence, MCL 750.89, while similar to MCL 750.529, requires the additional element of an actual "assault."[8]

---

[8] MCL 750.529 does include a provision for imposition of a minimum two-year sentence "[i]f an aggravated assault or serious injury is inflicted by any person while violating this section . . . ." This merely provides a prosecutor with a certain degree of latitude in electing to charge a particular offender, based on the circumstances of the case. Notably, both

Clearly, 2004 PA 128 was enacted, at least in part, to legislatively reinstitute a transactional approach to this crime, in response to our Supreme Court's decision in *People v Randolph*, 466 Mich 532; 648 NW2d 164 (2002). While the Legislature was motivated to enact a provision that would establish a transactional approach to robbery in order to not limit or restrict to a temporal point during the commission of the crime when the threat of violence or use of a weapon had to occur, the statutory language has exceeded this restricted purpose and it is beyond the role of this Court to speculate regarding what the Legislature intended to do. Rather, we can only enforce the language of the statute as it is actually written.

We would assert that the two remaining criminal statutes in this chapter of the Penal Code also reflect this broader perspective. Notably, the carjacking statute, MCL 750.529a, is almost identical to the wording of MCL 750.530. Specifically, MCL 750.529a provides, in relevant part:

> (1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.
>
> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an

statutory provisions, MCL 750.89 and MCL 750.529, indicate that punishment for either offense is imprisonment for life, or for any term of years. A panel of this Court has indicated, in an unpublished opinion, that assault with intent to rob while armed comprises a necessarily included lesser offense of armed robbery but went further to suggest that "[t]he offenses are distinguished only by whether a larceny occurred." *People v Hunt*, unpublished opinion per curiam of the Court of Appeals, issued May 12, 2009 (Docket No. 284648), p 2.

attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

As already noted, 2004 PA 128 also revised this statute. Similar to MCL 750.529, the earlier version of the carjacking statute provided, in relevant part:

(1) A person who by force or violence, or by threat of force or violence, or by putting in fear robs, steals, or takes a motor vehicle as defined in section 412 from another person, in the presence of that person or the presence of a passenger or in the presence of any other person in lawful possession of the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

Once again, the Legislature removed the language "robs, steals, or takes," insinuating that the revised statute was intended to include attempts to commit the designated crime. In contrast, MCL 750.531, which has not been subject to any recent revisions, clearly indicates that it encompasses the "intent" to commit the crime of bank robbery. Specifically, MCL 750.531 states:

Bank, safe and vault robbery—Any person who, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or attempt, or threaten to confine, kill, maim, injure or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe or other depository of money, bond or other valuables, or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, or shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place, shall, whether he succeeds or fails in the perpetration of such larceny or

felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years.

This is important to demonstrate that the concept or legislative act of including language that encompasses an attempt within the statutory definition of a crime is neither unusual nor inconsistent with the most current revisions pursuant to 2004 PA 128. In fact, the revisions to MCL 750.529 through MCL 750.530 now render all of the statutes within this chapter of the Penal Code internally consistent.[9]

A recognized "rule of statutory interpretation provides that well-settled common-law principles are not to be abolished by implication, and when an ambiguous statute contravenes the common law, it must be interpreted so that it makes the least change in the common law." *Heinz v Chicago Rd Investment* Co, 216 Mich App 289, 295; 549 NW2d 47 (1996). However, simultaneously, "this Court is instructed to avoid any construction that would render a statute, or any part of it, surplusage or nugatory." *Id.* at 295-296. First and foremost, concerns regarding the revised statute's alleged abrogation of the common law by no longer requiring a completed larceny are unnecessary. This particular concern pertaining to statutory interpretation pertains to ambiguous statutes and we believe the language of MCL 750.529 and MCL 750.530 to be clear in encompassing attempts within the purview of "in the course of committing a larceny" by definition. Second,

---

[9] We would note that other jurisdictions have adopted the approach of including an attempt to commit the offense within the statute defining the crime. " 'Under some of the new penal codes robbery does not require an actual taking of property. If force or intimidation is used in the attempt to commit theft this is sufficient.' " Black's Law Dictionary (8th ed), quoting Perkins & Boyce, Criminal Law (3d ed, 1982), p 343, after defining "robbery." See, also, *Irons v State*, 886 So 2d 726 (Miss App, 2004).

the very fact that the Legislature has elected to use a transactional approach is according to our Supreme Court, in and of itself "contrary to the common law." *Randolph*, 466 Mich at 545. If the Legislature intended this statute to adopt a transactional approach, it is reasonable to assume it was aware of its abrogation of the common law and intended to take it a step further. See 22 Michigan Civil Jurisprudence, Statutes (2009), § 220. In addition, the statute, even before its revision, superseded the common law. Specifically:

> When a statute takes up and completely covers a subject previously governed by the common law, the common law ceases to operate upon it, except where the statute has made no provisions for its punishment. The statute declaring how penalties will be enforced covers the entire ground and leaves nothing to be supplied by the common law. By statute the common law prevails where there is no specific statute determining what constitutes an offense. . . .
>
> The state is not tied down by any provision of the Federal Constitution to the practice and procedure which existed at common law; and thus, subject to the provisions of its own constitution, it may avail itself of the wisdom gathered from experience to make such changes as may be deemed necessary. [1 Gillespie, Michigan Criminal Law & Procedure (2d), § 1:5, pp 19-20.]

Finally, as a general observation, in defining a robbery, the "essential elements of unarmed robbery are assault with force and violence while the defendant is not armed, accompanied by the intent to rob and steal." 4 Gillespie, Michigan Criminal Law & Procedure (2d), § 133:2, p 400. Hence, it is the violence or threat of force and the intent that constitute the primary elements rather than the successful completion of a particular act that comprise this offense.

Further, the legislative history pertaining to the statutory revisions supports a holding that the inclu-

sion of attempts within the offense was deliberate. Specifically, in discussing the content of the proposed revisions, it was noted:

> The bill would amend the Michigan Penal Code to specify that certain offenses involving larceny *would include acts that occurred in an attempt to commit the larceny,* during the commission of the larceny, in flight or attempted flight after the larceny was committed, or in an attempt to retain possession of the stolen property. This would apply to armed robbery, unarmed robbery, and carjacking. [Senate Fiscal Agency Analysis, HB 5105, May 17, 2004 (emphasis added).]

Unfortunately, following revision of the statutory language, the application and interpretation of these provisions has not been consistent within caselaw. In *People v Chambers*, 277 Mich App 1, 8 n 7; 742 NW2d 610 (2007), this Court acknowledged the revision of MCL 750.529 and MCL 750.530 and noted the alteration of previously recognized elements defining these crimes. Subsequently, in an unpublished opinion, this Court, citing *Chambers* opined, in pertinent part:

> Under the plain language of the armed robbery statute, the phrase "in the course of committing a larceny" includes acts that occur in an attempt to commit a larceny, during its commission, and ones that occur in flight after the larceny. MCL 750.530. Thus, the armed robbery statute does not require that a felonious taking or completed larceny occur; it requires that the use of force or the placement of a person in fear, occur "in the course of committing a larceny" and with the use of a dangerous weapon, or an object reasonably believed to be a dangerous weapon. [*People v Nelson,* unpublished opinion per curiam of the Court of Appeals, issued January 8, 2009 (Docket No. 281662), p 2.]

Other opinions appear to retain the previous requirements of a completed larceny but lack a certain level of clarity in their analysis. By way of example, in *People v Thomas*, unpublished opinion per curiam of the Court

of Appeals, issued October 6, 2009 (Docket No. 287382), the Court distinguished between the revised armed robbery statute and the bank robbery statute. However, in undertaking this analysis the Court did not recognize any significant departure in the elements for armed robbery from caselaw that existed before the revision of MCL 750.529, resulting in the determination by the Court that "[a]rmed robbery continues to require a theft from a person . . . ." *Id.*, unpub op p 2. Notably, in and of itself this is an inaccuracy because the current statute encompasses the use or threat of force (with the presence or representation of a weapon) against a person while "in the course of committing a larceny of any money or other property that may be the subject of larceny . . . ." MCL 750.529; MCL 750.530(1). It does not require a direct "taking" or "theft from a person." Similarly, a statement by this Court in *People v Monk*, unpublished opinion per curiam of the Court of Appeals, issued January 22, 2009 (Docket No. 280291), contains an obvious contradiction. On the one hand, the Court states, "Acts included in the phrase 'in the course of committing a larceny' include all acts that occur during a larceny's attempt or commission . . . . An attempted or committed larceny by an armed individual, or by a person the victim reasonably believes is armed, is required under the statute." *Id.*, unpub op p 2. However, this statement is immediately followed by a reference indicating the necessity of a taking despite recognition that the statute encompasses attempts to commit the crime. Specifically, the Court opined, "The statute does not expressly require that any property actually taken must be owned by the victim. Rather, property must just be taken from the victim or his presence in the course of a larceny."[10] *Id.*

---

[10] This same inconsistency is also present within caselaw involving MCL 750.529a, the carjacking statute. In discussing concerns pertaining

Courts must proceed with greater caution in their use and reliance on prior published opinions delineating the elements of armed robbery, which preceded the revision of MCL 750.529. "[A] change by amendment in the phraseology of a statute is presumed to indicate a legislative purpose to change the meaning." 3A Michigan Pleading & Practice (2d ed, 2007 revised vol), § 36:146, p 251; see, also, *People v Auto Serv Councils of Mich, Inc*, 123 Mich App 774, 787; 333 NW2d 352 (1983) ("It is reasonable to presume some intentionality in the insertion of this additional language."). Clearly, the Legislature has enacted changes affecting the elements comprising this offense and it is our responsibility to correctly apply the revised language of MCL 750.529 to the particular evidence and facts of each individual case.

### IV. CONCLUSION

"[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must

---

to double jeopardy considerations involving the carjacking statute and the assault with intent to rob while armed statute, this Court noted: "[T]he assault with the intent to rob while armed statute does not require the larceny of a motor vehicle, as does the carjacking statute," implying the necessity of a completed larceny. *People v McGee*, 280 Mich App 680, 685; 761 NW2d 743 (2008). See, also, *People v Carter*, unpublished opinion per curiam of the Court of Appeals, issued March 27, 2007 (Docket No. 268408), p 2, indicating the carjacking statute requires a "taking and asportation"; *People v Richardson*, unpublished opinion per curiam of the Court of Appeals, issued October 25, 2007 (Docket No. 270606), p 3, implying the necessity of a completed taking but not retention of a vehicle to be convicted of carjacking. In contrast, in *People v Morgan*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2009 (Docket No. 284986), p 2, this Court recognized the necessity of only an attempt to commit a larceny as meeting the statutory requirements for carjacking. In *People v Dearmin*, unpublished opinion per curiam of the Court of Appeals, issued May 11, 2006 (Docket No. 259432), p 3, a panel of this Court clearly recognized the inclusion of an attempt within MCL 750.529a, stating, in relevant part: "While the new statute makes clear that actions taken in an attempt to commit a larceny are included in the ambit of the statute, it also makes clear that the required criminal act or attempt is a larceny."

view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). In the factual circumstances of this case, defendant acknowledged that he represented to the store clerk that he was in possession of a weapon at the Admiral tobacco shop. From the colloquy at sentencing, it was also established that defendant had the intent to take or obtain money from the store's cash register. It was not established that defendant had any intention to harm the store's clerk. While defendant was not successful in that he left the store without money from the cash register, sufficient elements of the crime were established to sustain his conviction for armed robbery based on the language of the statute.

Affirmed.

OWENS, P.J., concurred.

GLEICHER, J. (*dissenting*). I respectfully dissent. In my view, the Legislature did not intend that its 2004 amendment of the armed robbery statute would fundamentally alter the elements of that offense by eliminating the requirement of a completed larceny.

### I. UNDERLYING FACTS AND PROCEEDINGS

On July 13, 2006, a man matching defendant's description entered a Clark gas station in Norton Shores, declared that he had a gun, and ordered the attendant to give him all the money in the cash register. After the attendant complied, the assailant pushed her into a back room and fled. The next day, defendant entered

the Admiral tobacco shop (Admiral Tobacco) in Roosevelt Park, approached the clerk with his hand in his jacket, and announced, "[Y]ou know what this is, just give me what I want." The clerk did not give defendant any money or property, and defendant fled from the store without having stolen anything. Defendant apparently broke his leg in flight from the store, and the police eventually apprehended him. When the police arrested defendant, they noted that he wore on his body and possessed in his vehicle the same clothing worn by the man who had robbed the Clark station the previous day.

The prosecutor charged defendant with armed robbery of the Clark station (Case No. 06-053668-FC). In a separate complaint arising from the Admiral Tobacco events, the prosecutor charged defendant with assault with intent to rob while armed, MCL 750.89, and armed robbery, MCL 750.529 (Case No. 06-053640-FC). At a January 2007 hearing, the prosecutor informed the circuit court "that [defendant] will be offering . . . pleas of guilty in both files." The prosecutor advised that in the Admiral Tobacco case, the prosecution had elected to dismiss the assault with intent to rob while armed charge and accept defendant's guilty plea to a charge of armed robbery. Defense counsel summarized the parties' agreement that defendant's sentence would "not . . . exceed 24 years on the minimum-maximum at the Michigan Department of Corrections."

After apprising defendant of his constitutional and other rights, the circuit court moved on to establish a factual predicate for defendant's plea to the Clark station robbery. However, defendant denied having represented to the station attendant that he possessed a weapon. When the circuit court offered to allow the parties additional time to further discuss defendant's

guilty plea, the prosecutor suggested that the court instead establish the "factual scenario of the Admiral" Tobacco incident. Under questioning by the prosecutor, defendant admitted that he had entered Admiral Tobacco with the intent to steal money, had his hand "up under" his coat, and told the clerk, "[Y]ou know what this is, just give me what I want." The prosecutor's questioning continued as follows:

> [*Prosecutor*]: Okay. And it was your intent, at that time, for her to give you the money out of the cash register, is that right?
>
> *Defendant*: Yeah.
>
> [*Prosecutor*]: All right.
>
> *The Court*: Great—
>
> [*Prosecutor*]: And I think that satisfies.
>
> *The Court*: Great. I think we're all set on Admiral.

The parties then returned to presenting a factual basis for defendant's plea to the Clark station robbery. Defense counsel averred that defendant was high on cocaine during the Clark station robbery and could not recall the details of the crime. Defense counsel proposed that defendant could enter a no contest plea. The circuit court agreed it would resort to a police report to establish the factual predicate for defendant's no contest plea, summarizing,

> I think we've established here a lack of memory is the reason for the nolo plea about the Clark station, in file number 668. The report established that Mr. Williams, is guilty of the crime, on that file, to which he pleads no contest. The court finds the plea to be knowing, voluntary, understanding, and accurate. On that file, the court will accept the plea.
>
> On the other file, Mr. Williams's testimony does that for me. The court finds his testimony to establish commission

of that crime and location here in Muskegon County. The court finds that plea as well to be knowing, voluntary, understanding, and accurate. So the court accepts that plea.

On February 9, 2007, the court sentenced defendant to concurrent terms of 24 to 40 years' imprisonment for the Clark station and Admiral Tobacco robberies.

In October 2007, defendant moved to withdraw both his pleas, contending that the circuit court neglected to secure an adequate factual foundation for either plea. According to defendant, the Admiral Tobacco plea discussions revealed no evidence that he had committed a larceny, and the police report used to supply the factual basis of the Clark station plea did not sufficiently identify defendant as the robber. The circuit court denied defendant's motions, ruling (1) with respect to the Admiral Tobacco plea, that the language of the armed robbery statute allows conviction based on an attempted larceny, which the plea discussions substantiated, and (2) concerning the Clark station robbery, that the entirety of the police report and plea proceeding amply established defendant's participation in the Clark station robbery. This Court granted defendant's delayed application for leave to appeal, "limited to case no. 06-053640-FC [Admiral Tobacco] on the issue of a completed larceny only. In all other respects, the delayed application for leave is denied." *People v Williams*, unpublished order of the Court of Appeals, entered June 16, 2008 (Docket No. 284585).

## II. ANALYSIS

"There is no absolute right to withdraw a guilty plea once it has been accepted by the trial court." *People v Montrose (After Remand)*, 201 Mich App 378, 380; 506 NW2d 565 (1993). Where, as here, a defendant moves to

withdraw his or her plea after sentencing occurs, "[t]he trial court's decision will not be disturbed on appeal absent a clear abuse of discretion that resulted in a miscarriage of justice." *People v Boatman*, 273 Mich App 405, 406-407; 730 NW2d 251 (2006). "In reviewing the adequacy of the factual basis for a plea, this Court examines whether the factfinder could properly convict on the facts elicited from the defendant at the plea proceeding." *People v Brownfield (After Remand)*, 216 Mich App 429, 431; 548 NW2d 248 (1996), citing *People v Booth*, 414 Mich 343, 360; 324 NW2d 741 (1982).

Defendant insists that because he "never stole, moved or touched property" during the Admiral Tobacco incident, a fact-finder could not have convicted him of an armed robbery. Defendant emphasizes that larceny constitutes "an integral and necessary element of armed robbery," and absent evidence of a completed larceny, the circuit court erred by accepting his guilty plea to violating MCL 750.529. The majority rejects defendant's argument, holding that the Legislature's 2004 amendment of the robbery statute "specifically considers and incorporates acts taken in an attempt to commit a larceny, regardless of whether the act is completed." *Ante* at 75. In my estimation, the majority erroneously reaches its holding by reading into the statute language that the Legislature did not incorporate into the statute.

I approach my analysis bearing in mind that "[u]nderlying the criminal statutes of this state is the common law." *People v McDonald*, 409 Mich 110, 117; 293 NW2d 588 (1980). The common-law definition of a crime binds Michigan courts until the Legislature modifies the elements of the crime. *People v Perkins*, 468 Mich 448, 455; 662 NW2d 727 (2003). In *People v Covelesky*, 217 Mich 90, 100; 185 NW 770 (1921), our Supreme Court instructed:

> A well recognized rule for construction of statutes is that when words are adopted having a settled, definite and well known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown.

When a statute incorporates general common-law terms to describe an offense, we thus construe the statutory crime through the lens of common-law definitions. *People v Riddle*, 467 Mich 116, 125; 649 NW2d 30 (2002). In *Riddle*, our Supreme Court quoted approvingly the following relevant passage from *Morissette v United States*, 342 US 246, 263; 72 S Ct 240; 96 L Ed 288 (1952):

> [W]here [a legislature] borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

Michigan's original robbery statutes derived from the common-law crime of robbery, and fashioned that crime into two grades. *People v Calvin*, 60 Mich 113, 120; 26 NW 851 (1886). In *Calvin*, our Supreme Court distinguished the two grades of robbery as "one in which the robbery is committed by an assault and robbery from the person, the robber being armed with a dangerous weapon, . . . the other in which the offense is perpetrated by force and violence, or by assault or putting in fear, and robbing, stealing, and taking from the person of another, the robber not being armed with a dangerous weapon . . . ." *Id.* at 119. Today, MCL 750.530 delineates the elements of an unarmed robbery, and MCL 750.529 defines armed robbery by adding to

MCL 750.530 the element that the robber possessed a dangerous weapon or "an article used or fashioned in a manner to lead any person present to reasonably believe the article [was] a dangerous weapon, or [the robber] represent[ed] orally or otherwise that he or she [was] in possession of a dangerous weapon . . . ."

Under the common law, the crime of robbery indisputably included as an essential element the commission of a larceny. "Since, by definition, robbery includes larceny, robbery requires a caption and asportation of the property of another." Wharton's Criminal Law (15th ed), § 457, p 13. Wharton further instructs that a defendant accomplishes "a caption when . . . [he] takes possession; he takes possession when he exercises dominion and control over the property." *Id.* Professors Wayne LaFave and Austin Scott also explain, in relevant part:

> Robbery, a common-law felony, and today everywhere a statutory felony regardless of the amount taken, may be thought of as aggravated larceny—misappropriation of property under circumstances involving a danger to the person as well as a danger to property—and thus deserving of a greater punishment than that provided for larceny. [LaFave & Scott, Criminal Law (Hornbook Series, 1972), § 94, p 692.]

Larceny, in turn, "requires that there be a 'trespass in the taking,' i.e., that the thief take the property out of the possession of its possessor. . . ." *Id.*, § 85, p 622.

In *Covelesky*, 217 Mich at 96-97, our Supreme Court observed that Michigan's robbery statutes embody the common-law offense of robbery:

> Robbery at common law is defined as the felonious taking of money or goods of value from the person of another or in his presence, against his will, by violence or putting him in fear. This definition has been followed by

most of the statutes, and even where the language has been varied sufficiently to sustain, by a literal interpretation, a narrower definition of the offense, it has usually been held that it could not be presumed that the legislature intended to change the nature of the crime as understood at common law. [Quotation marks and citation omitted.]

In *Saks v St Paul Mercury Indemnity Co*, 308 Mich 719, 723-724; 14 NW2d 547 (1944), the Supreme Court quoted approvingly the following from a decision of the Washington Supreme Court, *Cartier Drug Co v Maryland Cas Co*, 181 Wash 146, 149; 42 P2d 37 (1935): " 'In the administration of criminal law, two distinct elements are held to be necessary to the crime of robbery: (1) Putting the victim in fear of violence to his person or property; and (2) the taking of money, property, or thing of value from his person or in his presence.' " And in *People v LaTeur*, 39 Mich App 700, 706; 198 NW2d 727 (1972), this Court noted that "[l]arceny is one of the essential elements of an armed robbery charge." More recently, in *People v Jankowski*, 408 Mich 79, 87; 289 NW2d 674 (1980), the Supreme Court reiterated the proposition that "[r]obbery has long been defined in this jurisdiction to be nothing more than a 'larceny committed by assault or putting in fear'." "When the taking is accomplished by force or assault, the offense is aggravated to one of robbery." *Id.* at 88.

With these principles in mind, I conclude that the Legislature did not intend that the armed robbery statute would permit a conviction absent an accomplished larceny. In 2004, the Legislature reworked Michigan's robbery statute, MCL 750.529, to read, in relevant part, as follows:

A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to

reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

Concomitantly, the Legislature enacted a revised unarmed robbery statute, MCL 750.530, that described as follows the unlawful "conduct" referenced in § 529:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

(2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

The majority holds that when the Legislature amended § 530 in 2004, it intended to eliminate a larcenous taking as a requisite element of a robbery. In the majority's opinion, "[t]he legislative definition of 'in the course of committing a larceny' specifically 'includes acts that occur in an attempt to commit the larceny,' " reflecting the Legislature's intent to punish both complete and incomplete larceny-related actions. *Ante* at 75.

When construing statutory language, which we review de novo, this Court must ascertain and give effect to the Legislature's intent. *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002); *People v Hill*, 269 Mich App 505, 514; 715 NW2d 301 (2006). "Because the Legislature is presumed to understand the meaning of the language it enacts into law, statutory analysis must begin with the wording of the

statute itself." *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000); see also *Pasha*, 466 Mich at 382 ("The first step in that determination is to review the language of the statute itself.") (quotation marks and citation omitted). In *Bush v Shabahang*, 484 Mich 156, 167-168; 772 NW2d 272 (2009), our Supreme Court offered this additional guidance regarding statutory interpretation:

> A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. Moreover, courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute. Finally, an analysis of a statute's legislative history is an important tool in ascertaining legislative intent.

Our Supreme Court has explained that the Legislature enacted the current version of the robbery statute in response to the Supreme Court's decision in *People v Randolph*, 466 Mich 532; 648 NW2d 164 (2002). In *Randolph*, the Supreme Court considered whether the robbery statute then in effect embraced the "transactional approach" to robbery, under which "a defendant has not completed a robbery until he has escaped with stolen merchandise. Thus, a completed larceny may be elevated to a robbery if the defendant uses force after the taking and before reaching temporary safety." *Id.* at 535. The Supreme Court in *Randolph* rejected the transactional approach, holding that under the common law the force or violence element of robbery "had to be applied before or during the taking." *Id.* at 538. When the Legislature subsequently amended the robbery stat-

utes, it "explicitly stated that unarmed robbery is a transactional offense." *People v Morson*, 471 Mich 248, 265 n 2; 685 NW2d 203 (2004) (CORRIGAN, C.J., concurring).

Distilled to its essence, the majority's position here is that, in addition to legislatively overruling *Randolph*, the Legislature's 2004 amendments to MCL 750.529 and MCL 750.530 also fundamentally altered the common-law underpinnings of the crime of robbery by eliminating the requirement of a completed larceny. But my analysis of the statutory language and the legislative history reveals no support for the majority's conclusion. Although the Legislature has the authority to abrogate the common law, "[w]hen it does so, it should speak in no uncertain terms." *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006). Neither § 529 nor § 530 contains definite, clear, or plain language evincing the Legislature's intent to fundamentally alter the understanding of more than a century, that "[l]arceny is one of the essential elements of an armed robbery charge." *LaTeur*, 39 Mich App at 706.

Furthermore, the plain language of MCL 750.530 refutes that the amended robbery statutes permit conviction without proof of a completed larceny. Pursuant to § 530(1), a person who uses force or violence, puts in fear, or assaults another "in the course of committing a larceny" is guilty of a felony. Subsection 530(2) sets forth that the phrase "in the course of committing a larceny" includes "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." Section 530 does not specifically define "in the course of," but accord-

ing to *Webster's New World Dictionary* (2d college ed, 1970), "in the course of" means "in the progress or process of; during." Applying this meaning in the context of § 530, subsection 530(1) signifies that a person who uses force or violence at any point from the inception of the larceny until its conclusion is subject to prosecution for armed robbery. By elucidating in § 530 the "acts" constituting robbery, the Legislature intended to expand the temporal scope of the crime, transforming it into a transactional offense. Reading §§ 530(1) and (2) as a contextual whole, it appears that the Legislature sought to make clear that robbery encompasses acts that occur before, during, and after the larceny, not that the Legislature intended to eliminate larceny as an element of the crime. Nor does the legislative history suggest any purpose other than "to include any crime of larceny that involved the use of force or violence, or fear, at any time during the commission of the crime." House Legislative Analysis, HB 5105, February 12, 2004.

"Before accepting a guilty plea, a trial court must question the defendant to ascertain whether there is support for a finding that the defendant is guilty of the offense to which he is pleading guilty." *People v Watkins*, 468 Mich 233, 238; 661 NW2d 553 (2003). When questioning the defendant, the circuit court "must establish support for a finding that the defendant is guilty of the offense charged or to which the defendant is pleading." MCR 6.302(D)(1). Here, no evidence exists that defendant committed a larceny at Admiral Tobacco. Without evidence that defendant's actions at Admiral Tobacco included a larceny, I believe that the circuit court abused its discretion by denying defendant's motion to withdraw his guilty plea. Consequently, I would vacate

defendant's conviction and sentence with regard to the
Admiral Tobacco incident.[1]

---

[1] Because the length of the sentence imposed by the circuit court in the
Clark station robbery (Case No. 06-053668-FC) was directly linked to and
packaged with defendant's plea in the Admiral Tobacco case as part of a
bargain made pursuant to *People v Cobbs*, 443 Mich 276; 505 NW2d 208
(1993), I believe that defendant should be permitted to withdraw the nolo
contendere plea in Case No. 06-053668-FC.