*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 24, 2023

Plaintiff-Appellee,

v

No. 359050
Isabella Circuit Court
LC No. 2021-000406-FH

RUSSELL HOUGHTON,

Defendant-Appellant.

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

A jury convicted defendant, Russell Houghton, of felony welfare fraud under MCL 400.60(2) for failing to report a change in his adopted son's address that decreased Houghton's need for public assistance. On appeal, Houghton argues that the prosecution presented insufficient evidence to support this conviction; that the trial court erred by improperly admitting hearsay evidence; that the prosecution committed misconduct by making civic duty arguments; and that his trial counsel was ineffective for failing to object to the alleged hearsay and improper prosecutorial remarks. Finding no errors warranting reversal, we affirm.

## I. BACKGROUND

This case is about adoption subsidy funds that Houghton received from the Department of Health and Human Services (the Department) to support his adopted son, JRH. Houghton and his then-wife, Cherilyn, began receiving funds monthly in 2010 to care for JRH. At the time, Houghton and Cherilyn signed an Adoption Assistance Agreement (the Agreement) that required them to comply with various provisions as a condition of receiving the subsidy. The Agreement imposed a duty to report nine circumstances to the Department within two weeks of their occurrence. As relevant here, these circumstances included "[c]hanges in [the] Family's address" and "[t]he date the Family is no longer providing any support of the child." On February 23, 2017, Houghton and Cherilyn signed an annual report to verify their continued eligibility for the subsidy funds for JRH's care. The report confirmed that JRH was currently living with Houghton and Cherilyn.

Prompted by a phone call from Houghton's son-in-law, Travis, the Department would later find out that JRH moved in with Travis and Houghton's daughter, Elisha, from March to November 2017. Travis alleged that he and Elisha never received any financial assistance while caring for JRH. These allegations prompted Abigail Merchantz, an analyst in the Department's Adoption and Guardianship Assistance Office, to investigate whether the adoption subsidy funds received by Houghton and Cherilyn were being used for JRH's care. Merchantz verified that neither Houghton nor Cherilyn had reported any changes in JRH's circumstances after signing the February 2017 report. And Houghton ultimately confirmed by e-mail to Merchantz that JRH had been living with Travis and Elisha from March to November 2017. Over that period, Houghton and Cherilyn received $950.93 per month from the Department to care for JRH. Houghton claimed that, during these months, he was "unable to use the [adoption subsidy] funds" allocated for JRH because they were deposited into a bank account to which "only Cherilyn had access." But an investigation into Houghton's bank records revealed that Houghton continued to receive some adoption subsidy funds between March and November 2017 either by direct deposit into a joint account or by checks from Cherilyn after she received the funds. Lori Hernandez, the primary investigator in the case, testified that Houghton's bank records did not show that he ever made payments to JRH, Travis, or Elisha during the relevant period. Although Houghton told investigators that he continued to financially support JRH from March to November 2017, Houghton failed to provide documentation to support his statements.

The jury convicted Houghton as noted above. The trial court sentenced him to one day in jail, with credit for one day served, and ordered him to pay $3,736.28 in restitution. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Houghton first contends that the prosecution presented insufficient evidence to support his welfare fraud conviction.

We review a sufficiency-of-the-evidence challenge de novo, in a light most favorable to the prosecution, with any conflicts between evidence resolved in the prosecution's favor, and to determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). De novo review means that we evaluate the legal issue independently, "with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). That said, we do not interfere with the jury's role in determining the credibility of the witnesses. *Solloway*, 316 Mich App at 180. To the extent that it is relevant to Houghton's sufficiency argument, we also review de novo questions of statutory interpretation, such as "[w]hether a defendant's conduct falls within the scope of a penal statute." *People v Rea*, 500 Mich 422, 427; 902 NW2d 362 (2017).

Defendant was convicted of felony welfare fraud under MCL 400.60(2), which provides in relevant part:

> There is imposed upon every person receiving relief under this act either upon the person's own application or by the person's inclusion, to his or her knowledge, in the application of another the continuing obligation to supply to the

department issuing the relief . . . *information concerning changes in the person's circumstances or those of other persons receiving relief through the same application which would decrease the need for relief* . . . . Any person who shall neglect or refuse to submit to the department issuing relief the information required by this section, . . . if the amount of relief granted as a result of the neglect or refusal is $500.00 or more, is guilty of a felony . . . . [Emphasis added.]

In short, the welfare-fraud statute imposes a duty to report information about changes in the circumstances of other individuals "receiving relief through the same application which would decrease the need for relief" on anyone receiving benefits under the Social Welfare Act, MCL 400.1 *et seq.* MCL 400.60(2); *People v Joseph*, 237 Mich App 18, 19; 601 NW2d 882 (1999). This Court has defined "decrease the need for relief" to mean "to lessen to any degree the need for relief." *Joseph*, 237 Mich App at 24 (quotation marks omitted).

The trial court instructed the jury on the elements of the charge against Houghton, consistent with the Michigan Model Criminal Jury Instructions, M Crim JI 34.3. Those instructions provide:

(1) The defendant is charged with the crime of [refusing / neglecting] to provide certain information to the [Department]. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant was receiving public assistance benefits.

(3) Second, that the defendant [personally applied for those benefits . . .].

(4) Third, that the defendant [refused / neglected] to provide certain information to the [Department]. . . .

(5) Fourth, that the unreported information was information that the defendant had a duty to continue to provide to the welfare department. In this case, it is charged that the defendant [refused / neglected] to report . . . information about changes in the circumstances of other people who were receiving benefits through the same application . . . .

(6) Fifth, that the defendant knew that [he] had a duty to provide the information.

(7) Sixth, that the amount of public assistance benefits received as a result of the [refusal / neglect] to provide information was more than $500. [M Crim JI 34.3.][1]

---

[1] Although criminal jury instructions are not binding on this Court, we may consider them persuasive. See *People v Williams*, 288 Mich App 67, 76 n 6; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2012). Because there is no caselaw specifically detailing the elements that must be

Houghton does not dispute or challenge the first three elements: (1) he was receiving public assistance benefits through the adoption subsidy funds, (2) he personally applied for those benefits along with Cherilyn, and (3) he refused or neglected to provide information about JRH's change of address to the Department. Houghton focuses his challenge on the remaining elements.

First, Houghton contends that he had no duty to report JRH's new address to the Department because that was not one of the changes in circumstances listed in the Agreement. Houghton is correct that the Agreement, which he and Cherilyn signed in 2010, did not require him to report a change of address for JRH. The Agreement only required Houghton to report a change in the "Family's address," with "Family" defined as Houghton and Cherilyn. Thus, no provision in the Agreement referred to a change in the child's address. As a sufficiency-of-the-evidence argument, however, Houghton's contention is unpersuasive because it erroneously presumes that the Agreement defines the contours of the statutory duty under MCL 400.60(2). It is the statute, not the Agreement between Houghton and the Department, that imposes criminal liability. See *Rea*, 500 Mich at 427. And under the statute, Houghton had a "continuing obligation" to report information to the Department "concerning changes in the person's circumstances or those of other persons receiving relief through the same application which would decrease the need for relief." MCL 400.60(2). That is, the statute does not limit the duty to report only to those circumstances identified by the Department in the Agreement. The statutory language is broader, encompassing any changes in JRH's circumstances that would "decrease the need for relief" that Houghton and Cherilyn received in the form of the adoption subsidy funds. We therefore reject Houghton's contention that he lacked any duty to report JRH's change of address because that change was not listed in the Agreement.

The evidence at trial demonstrated that JRH was not living with Houghton between March and November 2017, Houghton failed to inform the Department of his son's new living situation, and Houghton continued to receive subsidy funds during that period. The evidence also established that after the Department began its investigation and asked Houghton to provide documentation showing that he spent the funds on JRH's care between March and November 2017, Houghton failed to do so. For instance, Houghton told Hernandez that Travis and Elisha never received any of the adoption subsidy funds because Houghton forgave a home loan that he had extended to them. But Houghton never provided any documentation supporting the existence of a loan or loan forgiveness. The jury could thus reasonably infer from this evidence that JRH's move was a change in circumstances that decreased, to some degree, Houghton's need for the adoption subsidy funds. While Houghton testified that he spent at least the full subsidy amount on JRH each month—giving him cash, transporting him to and from various locations, and paying for clothing and sports equipment—the jury had a right to disbelieve this testimony and give weight to the evidence as it saw fit. See *Solloway*, 316 Mich App at 180. See also *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018) ("The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever

---

proven to satisfy MCL 400.60(2), we consider the criminal jury instructions persuasive. The parties also both rely on the instructions to identify the elements of the offense.

contradictory evidence is provided by the defendant."). For these reasons, sufficient evidence supported that Houghton had a duty to report JRH's change of address to the Department.[2]

Houghton's argument about duty is intertwined with his argument about knowledge. In Houghton's view, the Agreement was the only evidence that informed him of his reporting duties. Thus, because the Agreement did not list the child's address as a change that he had to report, Houghton claims there was insufficient evidence that he knew about the duty to report that information. While the Agreement was a one-time contract signed by Houghton and Cherilyn in 2010, the annual report that they signed in February 2017 required them to verify that JRH was currently living with them. Houghton and Cherilyn confirmed that JRH was living in their home. As shown below, the annual report also included an option to indicate if the adopted child was no longer living with the family.

2.  STATUS OF CHILD (Check only the boxes which currently apply)

☒ Child is currently living with us/me and is our/my legal responsibility

☐ Child is married ...............................................................................

☐ Child has entered military service.....................................................

☐ Child is no longer our responsibility (Explain on back of form)............

☐ Child is no longer living with us (Explain on back of form).................

The month after Houghton signed the annual report, JRH moved in with Elisha and Travis. Merchantz testified that recipients of adoption subsidy funds have to disclose changes in the annual report throughout the year. Thus, according to Merchantz, Houghton and Cherilyn should have contacted the Department when JRH moved out to determine their continued eligibility for the adoption subsidy.

Viewed in the light most favorable to the prosecution, the evidence introduced at trial was sufficient for a rational jury to conclude that Houghton knew he had a duty to report JRH's move. To begin with, Houghton and Cherilyn confirmed JRH's living status on the annual report weeks before JRH moved in with Elisha and Travis. The fact that the parents had so recently provided this information to the Department provides circumstantial evidence that Houghton knew he had to report JRH's move once it occurred. See *Harverson*, 291 Mich App at 178 ("Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent."). There was also sufficient evidence that Houghton knew that JRH's change in address was a circumstance that lessened the parents' need for the adoption

---

[2] Notably absent from the trial court's jury instruction, and from the model instruction in M Crim JI 34.3, is that the duty to report is triggered when changes in circumstances "decrease the need for relief." MCL 400.60(2). As discussed, this phrase is central to the statutory language and the scope of the duty. We therefore suggest that the Committee on Model Criminal Jury Instructions revise M Crim JI 34.3 so that the duty element tracks the statutory language under MCL 400.60(2). Doing so will help ensure that the prosecution properly meets its burden on each element. Because Houghton has not challenged the jury instructions in this case, and because a rational jury could conclude that the change in JRH's living arrangements was a circumstance that decreased Houghton's need for the adoption subsidy, sufficient evidence supported his conviction.

subsidy, therefore triggering the duty to report. See MCL 400.60(2). In March 2018, Houghton e-mailed the Department to confirm that JRH had been living with Elisha and Travis from March to November 2017. Hernandez testified that in this email, Houghton explained that the family had been experiencing financial problems and that he was "trying to help [JRH] but was unable to use the funds that were for that purpose." Houghton continued by alleging that "the money for the adoptions was deposited into an account that only [Cherilyn] had access to" and that the funds were "used at [Cherilyn's] discretion and not for the benefit of the family." In essence, Houghton admitted in his e-mail correspondence that the adoption subsidy funds designated for JRH were not being used for that purpose from March to November 2017. A jury could thus reasonably conclude that Houghton knew that his need for the adoption subsidy funds lessened once JRH left the home. Resolving all conflicts in the evidence in the prosecution's favor, there was sufficient evidence presented at trial that Houghton knew he had a duty to report JRH's change in address to the Department.

Finally, Houghton contends that the prosecution failed to prove that he was guilty of welfare fraud because it failed to sufficiently prove that he was no longer providing *any* support to JRH. As noted above, the Agreement required Houghton to inform the Department if he was no longer providing any support for JRH. But the welfare fraud statute, MCL 400.60(2), imposed a duty to report a change in circumstances that lessened the need for relief, not outright eliminated that need. See *Joseph*, 237 Mich App at 24. And to constitute a felony, the prosecution had to establish that Houghton received at least $500 more in public assistance than he was entitled to receive.

Hernandez testified that bank records showed that the adoption subsidy funds were paid into an account that Houghton had access to through April 2017, which conflicted with Houghton's claim that he had not received any of the funds when JRH was out of the house. Even after the payments began being deposited into Cherilyn's individual account, the records showed that Cherilyn wrote a check to Houghton in August 2017 for $2,948 that said "Russ sub" on it. Confronted with this evidence at trial, Houghton admitted that he received at least two subsidy payments for JRH when the child was out of the home. Hernandez concluded from her investigation that Houghton and Cherilyn received an overpayment of nearly $7,500 between March and November 2017. Her opinion about the overpayment did not change after she spoke with Elisha, Cherilyn, or Houghton. Again, Houghton never provided any documentation to support that he used the thousands of dollars in subsidy funds for JRH's care between March to November 2017. And the prosecution "was not required to prove affirmative assertions based on facts that were entirely within [Houghton's] knowledge[.]" *Joseph*, 237 Mich App at 24-25. Accordingly, a jury could reasonably infer from evidence of the Department's investigation that Houghton collected an overpayment of at least $500 in subsidy funds. In sum, there was sufficient evidence for a rational jury to find proof beyond a reasonable doubt on each of the elements of felony welfare fraud.

## III. HEARSAY

Houghton next argues that the trial court erred several times by allowing the prosecution to present inadmissible hearsay evidence.

As an initial matter, the prosecution contends that Houghton preserved some, but not all, of his hearsay claims. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), citing MRE 103(a)(1). Houghton objected to the admission of Hernandez's testimony about the allegations that triggered the investigation on hearsay grounds, so this claim is preserved. Likewise, Houghton objected to Hernandez's testimony about whether her conclusions had changed after speaking with Elisha. Although Houghton did not object to Hernandez's testimony about whether her conclusions changed after speaking with Cherilyn, this testimony came right after the trial court overruled Houghton's objection to Hernandez's identical testimony about her conversation with Elisha. Thus, we consider this issue preserved because further objection would have been futile. See *People v Stevens*, 498 Mich 162, 180 n 6; 869 NW2d 233 (2015) (an evidentiary issue can be preserved without objection if a court's rulings on prior objections to similar questions suggested that further objection would have been futile). Finally, Houghton objected to the prosecutor's questions of Houghton about Travis's call to the Department, but the objection was for "using facts not in evidence." Because Houghton did not object on hearsay grounds, this claim is not preserved for appeal. See *Thorpe*, 504 Mich at 252. Preserved evidentiary challenges are reviewed for an abuse of discretion, meaning we will not disturb the trial court's decision to admit evidence unless it fell outside the range of principled outcomes. *Id*. at 251-252. But unpreserved claims are reviewed for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain-error rule, the defendant must meet three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

Houghton contends that the admission of improper hearsay testimony violated his right to a fair trial. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible unless it falls within an established exception to the hearsay rule. MRE 802. "An out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c)." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014). "Such statements are not offered for a hearsay purpose because [their] value does not depend upon the truth of the statement[s]." *Id*. at 307 (quotation marks and citation omitted; alterations in original).

We address Houghton's hearsay challenges to Hernandez's testimony together. In response to a question about her investigation, Hernandez testified that "[i]t was alleged that the family that [JRH] was placed with was not receiving any adoption subsidy." The prosecutor later asked Hernandez, "[A]fter speaking with Elisha did any of your conclusions change about where the adoption subsidy money was going between March and November of 2017?" And the prosecutor asked the same question about Hernandez's conversation with Cherilyn. To both questions, Hernandez replied that her conclusions did not change after speaking with Elisha and Cherilyn.

None of these exchanges involved hearsay. Hernandez's testimony about the allegations in the case was not offered for the truth of the matter asserted—that Travis and Elisha were, in fact, "not receiving any adoption subsidy." Rather, the purpose of this testimony was to show its effect on Hernandez and how it shaped the steps she took in her investigation. These steps included

reviewing the Agreement signed by Houghton and determining how the adoption subsidy funds provided to Houghton and Cherilyn were being used. Thus, the trial court correctly ruled that this testimony was not offered for a hearsay purpose because it was introduced to show the effect on the listener. See *Gaines*, 306 Mich App at 306-307. Additionally, the exchange about whether Hernandez's conclusions changed after speaking with Elisha or Cherilyn did not constitute hearsay. Indeed, no out-of-court statement was even revealed. Hernandez was simply asked whether her conclusions changed after speaking with Elisha or Cherilyn, and she replied that they did not. This question-and-answer exchange revealed no substance of the out-of-court conversations with Elisha or Cherilyn, only that Hernandez had spoken with both individuals. Houghton's arguments on these grounds therefore lack merit.

Houghton also contends that the trial court erred by allowing inadmissible hearsay evidence during the prosecutor's cross-examination of him. The following exchange occurred:

[*Prosecutor*]: Now, the specific reason that this investigation started was because your son-in-law Travis called the Department of Health and Human Services, right?

[*Houghton*]: Yes.

[*Prosecutor*]: And he alleged that on that call that [JRH] was living with him and your daughter from March through November 2017, isn't that right?

[*Houghton*]: Correct.

[*Prosecutor*]: And he said that he found out [JRH] was receiving money during that time and that Elisha and Travis were not being supported at all, isn't that right?

[*Houghton*]: I didn't hear the phone, that's what the record says yes.

* * *

[*Prosecutor*]: As it relates to that call there's been, Travis called and stated that [JRH] was living with him and [Travis] and Elisha were not receiving financial assistance. That's what was said—

[*Defense Counsel*]: Objection, Your Honor, this is—he's using facts not in evidence. There's been no statements admitted from Travis . . . .

[*The Court*]: This is cross-examination. Your objection is overruled, go ahead.

This exchange presents a much closer call than Houghton's previous claims of hearsay. Unlike Hernandez's testimony, Travis's statements introduced by the prosecutor through cross-examination of Houghton may have been offered for a hearsay purpose. The prosecutor's questions appeared to be designed to prove the truth of the statements that JRH was living with Elisha and Travis, and that Elisha and Travis were not receiving any financial assistance for JRH's

care. That is evident by the prosecutor's last remark, pressing Houghton about Travis's allegations and asserting, "That's what was said . . . ."

The prosecution argues that this evidence was offered "to prove that Travis's phone call occurred and was the catalyst for Agent Merchantz's and Agent Hernandez's investigation, not to prove the truth of Travis's statements." On the one hand, the initial context for the prosecutor's questions to Houghton supports this argument because the prosecutor asked if Travis's call to the Department started the investigation. But on the other hand, the prosecution had already thoroughly established through Merchantz's testimony that Travis's phone call triggered the investigation. This reality suggests that the purpose in asking Houghton about Travis's phone call was different—the prosecutor hoped that Houghton would concede the truth of Travis's statements. In any event, we do not believe that any error—assuming one occurred—was plain because it was not clear or obvious.[3] Under the plain-error rule, an error is clear or obvious if "not subject to reasonable dispute." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). Reasonable minds could dispute whether the prosecutor introduced Travis's statements for a nonhearsay purpose—to show the effect of his phone call on the investigators—or for the truth of the matter asserted. We therefore conclude that any evidentiary error does not entitle Houghton to relief.[4]

## IV. PROSECUTORIAL MISCONDUCT

Houghton next argues that the prosecutor made impermissible civic duty arguments during his opening statement and closing argument.

To begin, the prosecution again asserts that Houghton failed to preserve these challenges for appeal. To preserve a claim of prosecutorial misconduct for appeal, the defendant must make a timely, contemporaneous objection. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Regarding the prosecutorial remarks made during the opening statement, Houghton's counsel did not object. That alone would render a challenge to those remarks unpreserved on appeal. But a full review of the record reveals that Houghton actually waived this argument. Waiver is the intentional relinquishment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "One who waives his rights under a rule may not then seek appellate

---

[3] Had this claim of error been preserved, we would reach the same conclusion under the abuse-of-discretion standard, which requires deference to a trial court's decision on a close evidentiary question. See *Thorpe*, 504 Mich at 252.

[4] We decline to consider Houghton's undeveloped argument that the admission of hearsay violated his Confrontation Clause rights. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). Houghton's brief on appeal states, "This hearsay is a violation of confrontation" and provides no additional coherent argument. We therefore deem the issue abandoned. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id.* (quotation marks and citation omitted). Near the end of the trial, Houghton's counsel objected to comments made by the prosecutor during closing argument. In doing so, counsel acknowledged the similarity of those comments with ones made during the prosecutor's opening statement but explained that he "made a choice not to interrupt [the prosecutor's] opening out of Mr. Houghton's best interest." This statement demonstrates an intentional abandonment of any claims of prosecutorial misconduct during the opening statement. See *People v Dobek*, 274 Mich App 58, 64-66; 732 NW2d 546 (2007) (explaining that the defendant waived most claims of prosecutorial misconduct arising out of closing argument when counsel moved for a mistrial on misconduct grounds not raised on appeal and expressly disclaimed any further objections to the prosecutor's remarks). For that reason, we consider this claim of error waived and decline to address it on the merits. *Carter*, 462 Mich at 215.

Conversely, Houghton's challenge to the prosecutor's rebuttal closing argument is preserved. Right after the prosecutor's contested remark, Houghton's counsel asked to approach the bench, and the parties went off the record. Then, once outside the presence of the jury and after a short recess, Houghton's attorney put on the record her objection that the prosecutor made an improper civic duty argument. On appeal, the prosecution claims that defense counsel's failure to place her objection on the record until *after* the recess renders this claim unpreserved. We reject such an inflexible interpretation of our preservation rules. See *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997) ("The purpose of the appellate preservation requirements is to induce litigants to do what they can in the trial court to prevent error and eliminate its prejudice, or to create a record of the error and its prejudice."). Houghton's counsel contemporaneously requested a bench conference with the court to discuss her objection, and then once the jury had been dismissed, placed that objection on the record. That was sufficient to preserve the claim of error. We review this preserved claim of prosecutorial misconduct de novo. *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Dobek*, 274 Mich App at 63. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64. Consistent with that rule, "[p]rosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Prosecutors are generally "accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted). But that latitude is not unbounded. As relevant here, "[t]he prosecutor commits misconduct when he or she invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014). Simply put, "[t]he prosecutor may not inject issues into a trial that are broader than the defendant's guilt or innocence." *Id.*

Houghton argues that he was denied a fair trial because the prosecutor made a civic duty argument at the end of closing argument. On rebuttal, the prosecutor concluded his argument by stating, "I would ask that you bring back a conviction on felony welfare fraud failure to inform and you ensure the integrity of the system so the adoption system doesn't collapse upon itself." Viewed in context, the prosecutor's final comment constituted an improper civic duty argument.

-10-

By expressly asking the jury to convict Houghton to "ensure the integrity of the system so the adoption system doesn't collapse upon itself," the prosecutor invited the jury to decide the case on the basis of a civic duty to protect the adoption and welfare system. See *Lane*, 308 Mich App at 66. Ensuring the integrity of the adoption system was not pertinent to the evidence presented in the case, nor did it bear any relevance to whether Houghton was guilty of welfare fraud on a failure-to-inform theory.

In any event, we conclude that this error does not entitle Houghton to reversal of his conviction. "[A] preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999), quoting MCL 769.26.[5] A claim of prosecutorial misconduct is constitutional if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process of law." *People v Blackmon*, 280 Mich App 253, 262; 761 NW2d 172 (2008). No plausible case can be made that the single-sentence civic duty argument at issue meets that standard. Thus, the operative question is whether Houghton has shown that it is more likely than not that the improper comment by the prosecutor was outcome determinative. See *Lukity*, 460 Mich at 496. Houghton has not made that showing. This comment at the end of a multi-day trial was not outcome determinative. As already noted, the prosecution presented significant evidence about the Department's investigation into Houghton's use of the adoption subsidy funds designated for JRH. Houghton also put on a thorough defense. The jury had ample testimony and evidence to consider before rendering its verdict, and the trial court instructed the jury that the lawyers' statements were not evidence. For these reasons, we are unpersuaded that the prosecutor's improper civic duty argument was outcome determinative.[6] Thus, Houghton is not entitled to relief.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, Houghton argues that his trial counsel was ineffective for failing to object on hearsay grounds to certain testimony discussed in Section III and to certain remarks by the prosecutor discussed in Section IV. Generally, whether a defendant received the effective assistance of counsel is "a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016) (quotation marks and citation omitted). But in the absence of an evidentiary

---

[5] That statute provides in full: "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26.

[6] The prosecutor referenced "the integrity of the system" multiple times during his closing argument, but Houghton has pressed no claim of cumulative error. See *Dobek*, 274 Mich App at 106 ("The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal . . . ."). Nor would we find any outcome-determinative error on this ground.

hearing, our review is limited to mistakes apparent from the existing record. *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018).

We consider this issue abandoned because Houghton merely asserts conclusory statements in his brief and provides no factual support for his claims. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). For example, Houghton asserts that "the failure to object . . . was constitutionally ineffective assistance of counsel," but he cites no facts in support. Therefore, we decline to address the merits of the ineffective-assistance claims.

Affirmed.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney